# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| LISA BENSON COOPER,<br><br>                     Plaintiff,<br>vs.<br><br>SCRIPPS MEDIA, INC.,<br><br>                     Defendant. | Case No. 17-cv-00041-BP |

## DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF PLAINTIFF'S EXPERT DR. MONICA BIERNAT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

DR. BIERNAT'S TESTIMONY CONCERNING HER QUALIFICATIONS AND
REPORT ......................................................................................................................................... 1

LEGAL STANDARD .................................................................................................................... 3

ARGUMENT .................................................................................................................................. 3

    I.    Dr. Biernat Failed to Use a Reliable Methodology for Evaluating Plaintiff's
         Claims. ............................................................................................................................... 3

    II.   Dr. Biernat's Expert Testimony Is Unnecessary ................................................................ 7

    III.  Dr. Biernat's Expert Testimony Should Be Excluded Under Rule 403. ............................ 8

    IV.  Dr. Biernat's Expert Testimony Should Be Excluded Under Rule 704. ............................ 9

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*City of Tuscaloosa v. Harcros Chemicals, Inc.*,
  158 F.3d 548 (11th Cir. 1998) ...................................................................................................7

*Collier v. Bradley University*,
  113 F. Supp. 2d 1235 (C.D. Ill.2000) .........................................................................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993).........................................................................................................1, 3, 5, 7

*Goswami v. DePaul University*,
  No. 12 C 7167, 2015 WL 251304 (N.D. Ill. Jan. 20, 2015) ........................................................6

*Huey v. United Parcel Service, Inc.*,
  165 F.3d 1084 (7th Cir. 1999) ..................................................................................................6, 7

*General Elec. Co. v. Joiner*,
  522 U.S. 136, 118 S.Ct. 512 (1997).............................................................................................5

*Jones v. National Council of YMCA*,
  No. 09 C 6437, 2013 WL 7046374 (N.D. Ill. Sept.5, 2013), *aff'd*, 34 F. Supp.
  3d 896 (N.D. Ill. 2014).................................................................................................................6

*Karlo v. Pittsburgh Glass Works, LLC*,
  No. 2:10-cv-1283, 2015 WL 4232600 (W.D. Pa. July 13, 2015) *vacated in
  part on other grounds, Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61
  (3rd Cir. 2017) .........................................................................................................................5, 6

*King v. McKillop*,
  112 F. Supp. 1214 (D. Colo. 2000).............................................................................................7

*Macado v. Ahmed*,
  974 F.2d 863 (7th Cir. 1992) ......................................................................................................7

*Marmo v. Tyson Fresh Meats, Inc.*,
  457 F.3d 748 (8th Cir. 2006) ......................................................................................................3

*In re Paoli R.R. Yard PCB Litigation*,
  35 F.3d 717 (3rd Cir. 1994).........................................................................................................3

*Rowe Entertainment, Inc. v. William Morris Agency, Inc.*,
  No. 98 Civ. 8272(RPP), 2003 WL 22272587 (S.D.N.Y. Oct. 2, 2003)......................................8

*Sunbeam Television Corp. v. Mitzel*,
  83 So.3d 865 (Fla. 2d DCA 2012) ..............................................................................................8

*TRW Title Ins. Co. v. Security Union Title Ins. Co.*,
  887 F. Supp. 1029 (N.D. Ill. 1995) ..........................................................................................4

*U.S. v. Finley*,
  301 F.3d 1000 (9th Cir. 2002) .................................................................................................7

*United States v. Morales*,
  108 F.3d 1031 (9th Cir. 1997) .................................................................................................7

*US v. Duncan*,
  42 F.3d 97 (2d Cir. 1994) .........................................................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S.Ct. 2541 (2011).......................................................................................4

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
  505 F. Supp. 1313 (E.D. Pa. 1981) ..........................................................................................8

**Rules and Regulations**

Federal Rules of Evidence
    Rule 403 ...............................................................................................................................1, 8
    Rule 404 ...................................................................................................................................8
    Rule 702 ............................................................................................................................ *passim*
    Rule 704 ...................................................................................................................................9

**Other Authorities**

*Weinstein's Federal Evidence* (2nd Ed. 2004), § 403.04[1][c] .......................................................8

# INTRODUCTION

Defendant Scripps Media, Inc. ("Defendant") hereby moves to exclude the testimony of Plaintiff's expert Dr. Monica Biernat, pursuant to Federal Rule of Evidence 702.

Plaintiff sponsors Dr. Biernat, a university professor whose research focuses on race and gender discrimination, to offer testimony that Plaintiff's work assignments, lack of promotion, and workplace discipline were attributable to implicit race bias or race-based stereotyping. However, as demonstrated below, Dr. Biernat has never provided expert testimony, her opinions are conclusory and unsupported by any reliable methodology and evidence arising out of the facts of this case, and her opinions are so generalized that they cannot assist the trier of fact. Based upon these fundamental defects in Dr. Biernat's purported expert opinion, this Court should exercise its gatekeeping function to exclude Dr. Biernat's expert testimony under both *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rules of Evidence 702 and 403. Dr. Biernat's testimony offers no help to the trier of fact understanding the issues in this litigation and should therefore be excluded.

## DR. BIERNAT'S TESTIMONY CONCERNING HER QUALIFICATIONS AND REPORT

Dr. Biernat provided a report dated September 29, 2017. Her deposition was taken by Defendant on November 14, 2017. Dr. Biernat stated in her report and at her deposition that she intended to review evidence and depositions elicited in discovery. She states in the report that "I will need access to all depositions and exhibits, and understand that plaintiff's counsel will provide them to me as discovery continues… It is my understanding that my report can and will be supplemented under the Federal Rules of Civil Procedure, to ensure that the information provided for purposes of my testimony is complete and correct." Exhibit 1, Biernat Report, Dep. Ex. 116 ("Report"), p. 2. At her deposition, she said she might ask to see more of Plaintiff's evaluations in addition to the single one Plaintiff's counsel had provided to her (Exhibit 2, Biernat Tr. ("Tr.") 123:12-25), and Plaintiff's counsel said that he would supply her with more

- 1 -

evaluations. Tr. 124:1-6. However, Dr. Biernat has not supplemented her report or disclosed that she has received any additional documents from Plaintiff's counsel, so any information she may have received cannot be the subject of testimony at trial, nor may she at this point amend any of the opinions stated in her report.

Before this case Dr. Biernat has never been asked to appear as an expert in litigation, has never prepared an expert report, and has never given expert testimony. Tr. 59:12-19. She admitted that she had to ask Plaintiff's counsel how to prepare an expert report, and sent him a draft of her report, and he directed her to include and exclude certain material from the report. He advised her to exclude any mention of pregnancy. Tr. 81:9–82:9.[1]

Dr. Biernat has never spoken to or communicated with Plaintiff or any other person who has been an employee of Defendant. Tr. 32:9–33:2; 105:18-21. She has never visited KSHB. Tr. 105:15-17. She did not ask to speak with Plaintiff. Her only source of information has been Plaintiff's counsel, who sent her a set of files in August 2017, along with Dee Jackson's discrimination charge. Tr. 11:9-19. She has neither asked for nor received additional information. She performed no research to provide facts to support the opinions stated in her report or testimony. Tr. 73:12-20.

In her report, finalized after receiving advice from Plaintiff's counsel concerning what the report should contain, she opines that "it is <u>likely</u> in my professional opinion that many of Ms. Benson's work experiences .. <u>can</u> be attributed to race bias on the part of her supervisors," Report, p. 9. At her deposition, she testified that both race <u>and</u> gender were factors in her employment, but that "race is <u>probably</u> a more dominant factor than gender in this case," Tr.

---

[1] Of course, there is no claim of pregnancy discrimination in the case, so Dr. Biernat's inclusion of that material in her report would not have helped Plaintiff.

- 2 -

75:5-7,[2] and that "you know, I am not speaking to definitively was she the victim of race bias." Tr. 104:24-25. In other words, Dr. Biernat has failed to express any real opinion concerning Plaintiff's claims, and allowing the jury to hear her testimony would lead to confusion.

## LEGAL STANDARD

The party seeking admission of expert testimony has the burden of establishing admissibility. *Marmo v. Tyson Fresh Meats, Inc*., 457 F.3d 748, 757–58 (8th Cir. 2006). Federal Rule of Evidence 702 permits opinion testimony that meets the following conditions:

> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In other words, "the proponent of the expert testimony must show by a preponderance of the evidence" that the expert's opinions are relevant, the expert is qualified to offer them, and "the methodology underlying his conclusions is scientifically valid." *Id.*

In assessing an expert's qualifications, a court should consider the proposed expert's full range of education, experience, and training. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3rd Cir. 1994). In addition, given that "a witness proffered to testify to specialized knowledge must be an expert," a court must take care to confirm that a proposed expert is qualified to offer opinion testimony in the specific area of his or her proposed testimony. *Id.* at 741.

## ARGUMENT

**I. Dr. Biernat Failed to Use a Reliable Methodology for Evaluating Plaintiff's Claims.**

*Daubert* has interpreted the word "knowledge" in Rule 702 as connoting "more than subjective belief or unsupported speculation. The term 'applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.'" *Daubert*, at

---

[2] Plaintiff's counsel quickly stated, despite what Dr. Biernat had just said, "[s]o since she's not offering opinions on gender, I do not anticipate she will offer any opinions as to whether it

590.  In *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 887 F. Supp. 1029 (N.D. Ill. 1995), the court excluded expert testimony on the grounds that it was based solely on deposition transcripts and exhibits and provided no expertise that would benefit the jury.  *Id.* at 1031.

Dr. Biernat's conclusions are based solely on a selection of documents sent to her by Plaintiff's counsel, and on no additional information, such as witness depositions, witness interviews, or additional documents.  Dr. Biernat testified that she relied on nothing more than the documents sent to her, and took no action to verify the information in those documents.  Relying solely on information from Plaintiff without verifying the information is representative is not considered sufficient facts and data under Rule 702.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2553-54 (2011).  Conclusions of conjecture, not proof of causation, are inadmissible.  *Id.*  Dr. Biernat wrote in her Report it was <u>likely</u> that Plaintiff was a victim of race bias.  Report, p. 9.  Unlike what one expects from an expert witness, she could only report that this was likely her opinion.  And in her deposition she said that she could not <u>definitively</u> say Ms. Benson was a victim of race bias.  Tr. 104:24-25.  Her use of improper methodology (believing everything Plaintiff's counsel gave her, without verifying the information) led to opinions that are inconclusive.

Dr. Biernat believed all of the information in the documents given to her, including statements from other KSHB employees about their experiences at the station.  Tr. 152:11–155:14.  Again, she made no effort to verify that information.  Without any basis, she has decided those persons are credible.  To the extent she is not relying on personal knowledge for her conclusions, her assessment of the testimony and credibility of witnesses must also properly excluded.  *US v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).  And she is relying on no work of her own, only on what she was given.  She testified that she performed no independent research as part of her engagement.  She asked for nothing, she only worked with what Plaintiff's counsel

(..continued)
played a role here."  Tr. 75:13-16.

selected for her. And even after that, <u>she allowed Plaintiff's counsel to edit her report</u> so it addressed only those topics favorable to Plaintiff's claims. In doing so, she crossed the line from being an expert to becoming an advocate.

Without a clearly articulated methodology, it is impossible to meet any of the *Daubert* factors: "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." *Daubert*, 509 U.S. at 593 (quotation and citation omitted). Dr. Biernat's opinions fall short of scientific rigor at the outset, and are inadmissible.

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the <u>ipse dixit</u> of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 515 (1997). Dr. Biernat's testimony concerns the concepts of implicit bias and stereotyping. Such testimony has been rejected by the courts. For example, in *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2015 WL 4232600 (W.D. Pa. July 13, 2015) *vacated in part on other grounds, Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61 (3rd Cir. 2017) (affirming exclusion of the expert's testimony, *id.* at 84), the court rejected the evidence of an expert concerning implicit bias in an age discrimination case. The court found that even if the witness' research on implicit bias was valid, he had failed to demonstrate its application to the defendant's actions. As the court noted, the testimony was on "the topic of implicit bias -- i.e., 'a lay designation for mental processes that function outside of conscious awareness.'" *Id.* at *3. (This description is startlingly similar to Dr. Biernat's definition of implicit bias.) The expert in that case did much more than Dr. Biernat here: he read numerous depositions taken in the case. But he did not visit the defendant's plant, speak with current or former employees, interview any of the managers involved in the challenged employment decisions, and performed no "independent, objective analysis on whether implicit

biases played any role in the decisions to terminate the...Plaintiffs." *Id.* at *7. The court found the testimony inadmissible under FRE 702.

Plaintiff intends to rely on Dr. Biernat's testimony to prove causation. The *Karlo* court found that to be a significant fact in excluding the expert testimony. The court noted that the expert's testimony "is more likely to confuse a jury rather than elucidate the issue(s) for the factfinder." *Id.* at *8. Similarly, in *Jones v. National Council of YMCA*, No. 09 C 6437, 2013 WL 7046374 (N.D. Ill. Sept.5, 2013), *aff'd*, 34 F. Supp. 3d 896 (N.D. Ill. 2014), the Magistrate Judge found that where the proffered expert had not visited the defendant's offices, had not spoken with any current or former employee, or read any of the declarations filed in the case, he "had done nothing that would reliably equip an expert to say something meaningful about employment practices at the [defendant]." *Id.* at *4. The expert was rejected under FRE 702. The District Court upheld the Magistrate Judge's decision. *Jones*, 34 F. Supp. 3d at 898-901.[3]

In *Huey v. United Parcel Service, Inc.*, 165 F.3d 1084 (7th Cir. 1999), a race discrimination and retaliation action in which the former employee lost at trial, the 7th Circuit affirmed the district court's exclusion of plaintiff's proffered "forensic vocational expert" testimony. The court noted that experts in discrimination cases often do statistical analysis to determine whether race (or some other protected characteristic) is an explanatory variable, but the witness proffered by the plaintiff did no such thing. *Id.* at 1086. The court criticized the "expert" for failing to study UPS's personnel files to determine whether the handling of the plaintiff's situation departed from the company's norm in a way that might imply retaliation or discrimination. *Id.* In fact, the witness did not do anything except talk to the plaintiff and read documents sent by plaintiff's counsel. *Id.*[4] In addition, the witness did not describe the

---

[3] The hostility of the courts to the theory of implied bias was discussed in *Goswami v. DePaul University*, No. 12 C 7167, 2015 WL 251304, at *13 (N.D. Ill. Jan. 20, 2015).

[4] Again, this is more than Dr. Biernat did. She testified she has never communicated with Plaintiff. Tr. 32:9-33:2.

reasoning used to reach his conclusions that the plaintiff was a victim of retaliation for racially motivated reasons. *Id.* The court held that giving a conclusion, without more, violates *Daubert*'s holding that courts must ensure that purported scientific testimony employs scientific methods to reach reliable conclusions. *Id.* at 1087. An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process. *Id.* The expert witness was properly excluded because he did not, as he must, substantiate his opinion. *Id.*

## II.  Dr. Biernat's Expert Testimony Is Unnecessary.

To pass muster under Rule 702, Dr. Biernat's testimony must be relevant and assist the trier of fact by providing information which is beyond the common knowledge of the average layperson. *U.S. v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002); *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997). Expert testimony can be admitted only when such testimony serves to inform the court about affairs not within the full understanding of the average person. *Macado v. Ahmed*, 974 F.2d 863, 870 (7th Cir. 1992). A witness who just knows more than the average person is not an expert.

> Expert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience or observation in respect of the subject under investigation.'

*Id., quoting Salem v. Unites States Lines, Co.*, 370 U.S. 31, 35 (1962).

Expert testimony is inappropriate when "an untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *King v. McKillop*, 112 F. Supp. 1214, 1222 (D. Colo. 2000), *quoting Smith v. Colorado Interstate Gas Co.*, 794 F. Supp. 1035, 1044 (D. Colo. 1992); *see also City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) (affirming federal court's exclusion of

statistician's characterization of documentary evidence as evidence of collusion because district court was capable of determining whether or not to draw such conclusions without the technical assistance of an expert witness); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1313, 1372 (E.D. Pa. 1981) (rejecting portions of economist's report because it merely narrated documents potentially before the court which the jury was capable of understanding and offered no economic analysis).

Testimony regarding this witness' generalized views concerning race in the workplace is not relevant to the specifics of Plaintiff's case, cannot aid the jury (and in fact invades the jury's fact finding duty), and is also be inadmissible under Fed. R. Evid. 404 as character evidence. *Collier v. Bradley University*, 113 F. Supp. 2d 1235, 1242 (C.D.Ill. 2000); *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, No. 98 Civ. 8272(RPP), 2003 WL 22272587 (S.D.N.Y. Oct. 2, 2003); *Sunbeam Television Corp. v. Mitzel*, 83 So.3d 865 (Fla. 2d DCA 2012).

## III. Dr. Biernat's Expert Testimony Should Be Excluded Under Rule 403.

Even if Dr. Biernat's testimony is deemed admissible under Rule 702, it should still be excluded under Rule 403. According to Rule 403,

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When conducting a Rule 403 inquiry, a court must "balance the probative value of and the need for the evidence against the harm likely to result from its admission." Rule 403, Advisory Committee Notes. According to Rule 403's Advisory Committee Notes, "unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." This typically means that the evidence appeals to the jury's sympathies, arouses the jurors' sense of horror, or triggers some other intense human reaction. *See Weinstein's Federal Evidence* (2nd Ed. 2004), § 403.04[1][c]. Dr. Biernat's testimony calls into question the problems of our society, and invites the jury to look beyond the

- 8 -

evidence in the case and attempt to cure our societal problems through an unjustified verdict for Plaintiff.

## IV. Dr. Biernat's Expert Testimony Should Be Excluded Under Rule 704.

Legal conclusions such as "race bias played a role in Plaintiff not receiving promotions" are inadmissible. Such conclusions, utilizing the correct legal standard and jury instructions, are for the jury and Judge, not for this professor who has never met or spoken with the Plaintiff or any of the defense witnesses and has never before been qualified as an expert witness.

## **CONCLUSION**

Dr. Biernat failed to pursue any transparent, scientific process to develop her conclusions, and could only offer unnecessary testimony which will waste the Court's time and will not assist the jury. It would inevitably lead to jury confusion because it is improperly aimed at proving causation. Therefore, her testimony and opinions are properly precluded as inadmissible.

Accordingly, Defendant respectfully requests that the Court enter an Order barring Plaintiff from calling Dr. Biernat to testify at trial, and from introducing at trial any evidence, arguments, or statements based on the opinions of Dr. Biernat.

Dated: April 10, 2018

Respectfully submitted,

DENTONS US LLP

By:    /s/ Mark P. Johnson

| | |
|---|---|
| M. Scott McIntyre (*pro hac vice*) | Mark P. Johnson     MBN 30740 |
| Email:  smcintyre@bakerlaw.com | Kate E. Hart     MBN 61601 |
| BAKER & HOSTETLER LLP | 4520 Main Street, Suite 1100 |
| 312 Walnut Street | Kansas City, Missouri 64111-7700 |
| Suite 3200 | 816-460-2400 - Telephone |
| Cincinnati, OH 45202-4074 | 816-531-7545 - Facsimile |
| Telephone:  513-929-3400 | mark.johnson@dentons.com |
| Facsimile:  513-929-0303 | kate.hart@dentons.com |

*Attorneys for Defendant*

SCRIPPS MEDIA, INC.

**CERTIFICATE OF SERVICE**

      I hereby certify the foregoing was electronically filed via CM/ECF, effecting service on counsel of record, as follows:

> Dennis E. Egan
> The Popham Law Firm
> 712 Broadway, Suite 100
> Kansas City, MO 64105
> Telephone: (816) 221-2288
> Telecopier: (816) 221-3999
> degan@pophamlaw.com
>
> *Attorneys For Plaintiff*

                                            /s/ Mark P. Johnson
                                          *An Attorney for Defendant*