IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA BENSON COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 17-0041-CV-W-BP |
| | ) | |
| SCRIPPS MEDIA, INC., d/b/a KSHB-TV 41, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXPERT DISCLOSURES

On October 30, 2018, Defendant served Plaintiff with Expert Witness Disclosures disclosing three expert witnesses: Professor Jon Krosnick, Dr. Beth Knoble, and Patrick McInerney. Plaintiff filed a Motion to Strike, arguing that (1) the designations are untimely and (2) in the case of Knoble and McInerney, the opinions are inadmissible. Defendant argues that the designations are timely and the experts' testimony is admissible. For the reasons set forth below, the Motion to Strike, (Doc. 238), is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff initiated this suit in state court, asserting claims of (1) discriminatory treatment based on race and (2) retaliation for engaging in protected conduct. Defendant removed the case to federal court in January 2017. On March 14, 2017, the Court issued a Scheduling and Trial Order that required Plaintiff to designate her experts by September 1, 2017 and Defendant to designate its experts by October 2, 2017. (Doc. 14, ¶ 7.) These deadlines were extended twice; the last extension set new deadlines of September 29, 2017 and October 30, 2017, respectively. (Doc. 33.) Discovery closed in December 2017, and after some motions to continue were granted the trial was set to commence in August 2018.

In May and June 2018, Defendant suspended Plaintiff and then decided not to renew her contract. Defendant's actions were allegedly motivated, at least in part, by (1) a post Plaintiff made on Facebook, and (2) the revelation during discovery that Plaintiff and her husband had not filed income tax returns. Discussions ensued as to whether Defendant's actions in May and June could be introduced as evidence in this case, and the parties generally agreed that the proper course was for Plaintiff to assert an additional claim for retaliation (either in a separate suit or in a Second Amended Complaint in this suit) so that it could be included in this lawsuit. Beyond this general agreement, the parties did not agree on many other details.

On July 20, 2018, the Court issued an Order that, *inter alia*, (1) directed Plaintiff to file a Second Amended Complaint, (2) reopened discovery, and (3) indicated (for reasons that are not relevant to this discussion) that given the facts already in the Record and the Court's prior rulings, additional summary judgment motions would not be entertained. (Doc. 178, ¶¶ 1, 3.) The Order also established other deadlines for the case, including a new trial setting. (Doc. 178, ¶ 3-4.) The Order did not reopen the time for designating expert witnesses.

On August 10, Defendant filed a motion asking the Court to reconsider and modify the July 20 Order. The motion identified numerous changes and rulings sought by Defendant; none of the requests related to designation of expert witnesses. (Doc. 192.) Similarly, the Suggestion in Support of the motion did not request changes related to the designation of expert witnesses. (Doc. 193.)

The Court participated in telephone conferences with the parties on September 14, 2018 and on October 30, 2018. (Docs. 207, 208, 232, 234.) Defendant did not raise the topic of expert witnesses during either conference.

2

Case 4:17-cv-00041-BP   Document 280   Filed 12/11/18   Page 2 of 11

On October 31 – the day after the second of these telephone conferences – Defendant filed Certificates of Service confirming that on October 30 it served Plaintiff with Expert Witness Disclosures for Professor Krosnick, Dr. Knoble, and McInerney. (Docs. 235-37.) These filings prompted Plaintiff's Motion to Strike.

## II. DISCUSSION

### A. Timeliness

Plaintiff argues that the designations are untimely because (1) the Court set a deadline for designating experts, (2) the deadline passed, and (3) the deadline was never revived. Defendant argues that the Court's silence on the issue meant that it was entitled to assume that Rule 26(a)(2)(D)(i) applied and that it could designate an expert if it did so at least ninety days before trial. The Court rejects Defendant's rationale.

First, and most importantly, the Court was not silent on the issue, so Rule 26(a)(2)(D)(i) does not apply. The Rule states that "[a]bsent . . . a court order," an expert disclosure must be made at least ninety days before trial. As discussed above, there was a court order: the Court set a deadline for disclosing expert witnesses, and extended it twice. Therefore, Rule 26(a)(2)(D)(i) does not apply. The fact that the deadline expired does not mean that the Court did not issue an Order, and the fact that the Court later issued another Order related to scheduling does not change this simple analysis. Courts issue many orders related to scheduling; there is no need for the Court to repeatedly restate the deadline for disclosing experts in each of them, or to repeatedly remind the parties (as Defendant's logic would suggest) that expired deadlines are still expired.

Defendant decries the unfairness of not being allowed to designate experts, but this argument misses the point. Defendant never *asked* the Court to revive the expired deadline for designating experts, so the Court did not consider doing so. This failing is particularly telling
3

given that Defendant filed a motion seeking modifications and clarifications of the July 20 Order, and yet in that motion it did not request an opportunity to designate expert witnesses. Moreover, the Court's practice of setting deadlines should have been sufficient to alert counsel that if Defendant wanted to designate more experts, the matter should have been raised and clarified, not assumed. This is not an instance in which asking for forgiveness is better than asking for permission – particularly when Defendant bypassed multiple opportunities to raise the issue. In fact, the timing of the disclosure – the day after a telephone conference addressing discovery issues – suggests that Defendant was engaged in sandbagging.

These observations aside, the Court is not inclined to bar expert testimony solely because it is untimely. Instead, the Court will consider this fact along with the nature of the testimony to be offered by the three experts, the importance of that testimony to the issues in the case, and the admissibility of the testimony.

### B.  Individualized Consideration of Defendant's Experts

#### *1.  Professor Jon Krosnick*

Professor Krosnick is a Professor of Humanities, Social Sciences, Communication and Political Science. (Doc. 239-1, ¶ 1.) He proposes to offer opinions in response to those offered by one of Plaintiff's experts, Dr. Monica Biernat. (*E.g,* Doc. 239-1, ¶ 2.) The Court will strike Defendant's designation of Professor Krosnick for two reasons.

First, the designation is not timely even under Defendant's reasoning. As discussed above, Defendant relies on Rule 26(a)(2)(D)(i) to argue that its October 2018 designations are timely because they were made more than ninety days before trial. However, Professor Krosnick's report is different from the other two in that it is intended to contradict or rebut another expert's report, and for that reason Rule 26(a)(2)(D)(i) does not apply. The relevant rule (assuming the Court had

4

not set any deadlines) would be Rule 26(a)(2)(D)(ii), which states that "if the [expert] evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party" the designation must be made "within 30 days after the other party's disclosure." Plaintiff designated Dr. Biernat's testimony more than a year before Defendant designated Professor Krosnick's.

Second, Professor Krosnick's testimony is not justified by the scope of proceedings permitted by the Court's July 20 Order. Discovery was reopened because of Plaintiff's suspension and the non-renewal of her contract, which prompted a new, distinct retaliation claim. In reopening discovery, the Court stated that discovery would be "limited to the events leading to Plaintiff's suspension and non-renewal in 2018." (Doc. 178, ¶ 3.) However, Dr. Biernat's opinion relates only to Plaintiff's discrimination claims and has no bearing on any retaliation claims. Dr. Biernat is prepared to testify about the role implicit bias plays in a person's subconscious, thereby causing a person to make decisions based on a person's race even if they do not realize they are doing so. This testimony will not have supported the retaliation claim added by the Second Amended Complaint, and discovery on matters unrelated to the new retaliation claim was not contemplated by the July 20 Order.

For these reasons, the Court grants the Motion to Strike to the extent that it relates to Professor Krosnick.

### *2. Dr. Beth Knobel*

Dr. Knobel is an Associate Professor of Communication and Media Studies. (Doc. 239-2, p. 8.)[1] In her report she states that she was asked to address industry standards regarding (1) journalists' use of social media, (2) "ethical and professional conduct by journalists, particularly

---

[1] All page numbers are those generated by the Court's CM/ECF system and may not correspond to the document's actual page number.

5

Case 4:17-cv-00041-BP   Document 280   Filed 12/11/18   Page 5 of 11

with regard to relations with their managers," and (3) the "implications of reporters not filing income tax returns in a timely manner or not paying income taxes in a timely manner." (Doc. 239-2, p. 6.) In the context of this case, Dr. Knobel's testimony is highly relevant. Plaintiff was allegedly suspended and ultimately not retained because of a Facebook post and her failure to file timely tax returns. Plaintiff intends to argue to the jury that these transgressions (if they were indeed transgressions) were so minor that they are merely a pretext to hide Defendant's retaliatory motive. Therefore, testimony about industry standards and norms is relevant to the issue because it will help the jury understand the gravity of Plaintiff's alleged misconduct.

The Court specifically rejects Plaintiff's argument that Dr. Knobel's testimony about industry standards can only be relevant in a negligence case, (Doc. 239, pp. 6-7); her testimony is relevant in this case because it helps rebut Plaintiff's intimation that Defendant's justifications are trivial in nature. The Court also does not agree with Plaintiff that her testimony is within the knowledge of ordinary jurors; the jurors may be able to evaluate Defendant's policies, but the jurors would not necessarily understand the justification for these policies or the gravity of any violations.

However, the details of Dr. Knobel's opinions go beyond these subjects, and to that extent her testimony is inadmissible because it is unhelpful to the jury. By taking this opportunity to limit Dr. Knobel's testimony, the Court alleviates the prejudice from Defendant's tardy disclosure while still permitting the parties a fair opportunity to present their theories to the jury. Accordingly, the Court has examined the Dr. Knobel's opinions from Part IV of her report, (Doc. 239-2, pp. 8-51), and concludes that she may not testify on the following matters:

1. The training that Plaintiff received (as discussed in Part IV(C)) – because this is a factual matter and not the subject of an expert opinion offered by Dr. Knobel, and the jury is fully

6

Case 4:17-cv-00041-BP   Document 280   Filed 12/11/18   Page 6 of 11

capable of determining what training Plaintiff received without the aid of expert testimony. Expert testimony must be helpful to the jury, Fed. R. Evid. 702(a), and "courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *American Auto Ins. Co. v. Omega Flex, Inc.,* 783 F.3d 720, 725 (8th Cir. 2015) (quotation omitted); *see also Lee v. Anderson,* 616 F.3d 803, 808-09 (8th Cir. 2010).

2. Dr. Knobel's opinion that Plaintiff violated Defendant's Social Media Policy and Code of Conduct (as discussed in Parts IV(D), IV(E) and IV(H)) – because Dr. Knobel's opinion is really her factual determination about what Defendant did and her subjective assessment on such subjects as (1) the meaning of Plaintiff's posts and actions and (2) Plaintiff's intent. Dr. Knobel does not have any special expertise on these issues, and the jury can assess these issues for itself.

3. Dr. Knobel's opinion that Plaintiff's post on Facebook "could be seen as threatening" and could be "interpreted as a veiled threat" (as discussed in Part IV(I)) – for reasons similar to those expressed in the preceding paragraph.

4. Dr. Knobel's opinion that Plaintiff was "disingenuous in her dealings with" Defendant and thereby violated Defendant's Code of Conduct and industry standards and "demonstrate[ed] a lack of integrity" (as discussed in Part IV(J)) – because (1) Dr. Knobel's opinion is really a factual determination about what Defendant did, (2) Dr. Knobel does not have any special expertise permitting her to evaluate whether Plaintiff was "disingenuous," and (3) the matter is one that the jury can determine for itself.

5. Dr. Knobel's opinion that "the timing of the decision not to renew her contracts does suggest to me that Ms. Benson is not the victim of retaliatory policies" (as discussed in Part

7

IV(M)) – because Dr. Knobel's expertise does not extend to determining whether somebody is subject to retaliation.

In short, as a general matter the Motion to Strike is denied with respect to Dr. Knobel's testimony about standards in the industry and the importance of and purposes for Defendant's policies. The Court cautions, however, that this does not constitute a ruling that all of the remaining portions of Dr. Knobel's testimony are admissible; Plaintiff is not foreclosed from making additional arguments about the admissibility of specific aspects of Dr. Knobel's testimony.

Finally, to further ameliorate the prejudice from Defendant's untimely disclosure, the Court will permit Plaintiff to depose Dr. Knobel if she wishes to do so, even if the deposition must occur after the close of discovery. Plaintiff is also permitted to designate an expert of her own, even if the deadline for designating experts has passed. Defendant will be permitted to depose any expert designated by Plaintiff, but only if Plaintiff deposes Dr. Knobel.

### 3.  Patrick McInerney

McInerney is a former prosecutor, having worked previously in the Jackson County (Missouri) Prosecutor's Office and as an Assistant United States Attorney in the Western District of Missouri. (Doc. 293-3, p. 1.) He was retained to review materials presented by Defendant and opine whether Plaintiff's "conduct was consistent with conduct that could have been prosecuted under applicable laws of the United States and whether that conduct would be considered a criminal offense . . . within the meaning of [Plaintiff's] employment contract." (Doc. 239-3, p. 5.) In particular, McInerney considered whether Plaintiff's conduct appeared to violate 26 U.S.C. § 7203, which makes it a crime to willfully fail to, *inter alia,* pay taxes or file tax returns. McInerney concludes that:

8

1. Plaintiff's "returns were not timely filed for the tax years 2012, 2014, 2015, 2016 and 2017." (Doc. 239-3, p. 7.)

2. Plaintiff "did not timely pay her 2015 income taxes." (Doc. 239-3, p. 7.)

3. "There also does not appear to be any evidence or testimony supporting" a defense of good faith. (Doc. 239-3, p. 7.)

4. "The evidence further supports the contention that [Plaintiff] voluntarily and intentionally failed to file the required tax return[s] . . . . Such a 'willful' failure satisfies the third element of" § 7203. (Doc. 239-3, p. 7.)

5. "It is my opinion that [Plaintiff] violated 26 U.S.C. § 7203 by failing to timely file required income tax returns for the years 2012, 2014, 2015, 2016 and 2017." (Doc. 239-3, p. 7.)

6. Plaintiff's employment contract reserves Defendant's right to terminate Plaintiff's employment if Plaintiff engages in "conduct, action, [or] inaction" that "would amount to a violation of law" and Plaintiff's failure to file tax returns "would be considered a 'violation of law' under the terms of her Employment Contract." (Doc. 239-3, p. 7.)

The Court grants Plaintiff's request to strike Defendant's designation of McInerney as an expert witness. His first two opinions are not really opinions; they state factual matters, and McInerney's testimony will not assist the jury. The jury is fully capable of determining if and when Plaintiff filed tax returns and paid taxes. McInerney's third opinion is similar, in that he represents that he has reviewed the evidence provided to him and from that concludes that certain facts cannot be proven. This is also a matter the jury can determine for itself. McInerney's fourth opinion – that Plaintiff acted willfully – is improper. Expert witnesses generally cannot offer opinions about another person's mental state or intent; additionally, McInerney does not claim to have any expertise that would permit him to do so.

9

McInerney's fifth opinion is also disallowed.  First, the probative value of that opinion – that Plaintiff violated § 7203 – is substantially outweighed by the risk of unfair prejudice and the risk of undue delay.  Fed. R. Evid. 403.  Plaintiff's actual guilt or innocence of a crime is not particularly important to the issues in the case.  While the parties are entitled to introduce evidence about what Plaintiff did or did not do with respect to her taxes, allowing a former Assistant United States Attorney to go further and offer his expert opinion that Plaintiff violated the law and therefore is guilty of a crime is unduly prejudicial when compared to the probative value of that opinion.  In the context of this case, it is sufficient for the jury to know that Plaintiff did not file her tax returns – and it is quite likely that the jurors are already familiar with the fact that individuals are required to file income taxes annually.[2]  Second, allowing McInerney to opine that Plaintiff actually violated § 7203 will certainly invite a trial (not merely a mini-trial) on a completely different matter.  Given the limited importance of Plaintiff's actual guilt or innocence, this will not only result in "undue delay" and "wasting time" within the meaning of Rule 403, but it is also inappropriate to require Plaintiff to prepare for what is essentially a second trial – particularly given Defendant's late notice to Plaintiff.  For these reasons, the Court is exercising its discretion to preclude McInerney's opinion that Plaintiff violated § 7203.

The Court also disallows McInerney's final opinion that Plaintiff's conduct constituted a "violation of law" within the meaning of the parties' contract.  This opinion is based on McInerney's opinion that Plaintiff violated § 7203, and the Court's discussion of that opinion applies in this context as well.  Additionally, McInerney's opinion about the meaning of the parties' contract is not helpful to the jury, and he does not profess any expertise with respect to interpreting it.

---

[2] The Court will entertain a request to instruct the jury that the law requires people to file tax returns.  The Court does not guarantee that a proper instruction can be crafted, but the Court is willing to consider such a request.

## III.  CONCLUSION

For the reasons stated above, the Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** to the extent that it seeks to strike expert testimony from Professor Jon Krosnick and Patrick McInerney.  It is also **GRANTED** with respect to portions of Dr. Beth Knoble's testimony, as outlined in Part II(B)(2) of this Order.  The motion is **DENIED** with respect to the remaining portions of Dr. Knoble's testimony.

**IT IS SO ORDERED.**

DATE: <u>December 11, 2018</u>

/s/ <u>Beth Phillips</u>
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT