**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| LISA BENSON COOPER, | |
| Plaintiff, | |
| vs. | Case No. 17-cv-00041-BP |
| KSHB-TV 41, et al., | |
| Defendants. | |

## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE REFERENCES TO INADMISSIBLE EVIDENCE OFFERED BY PLAINTIFF

Defendant Scripps Media, Inc., by and through its undersigned counsel, hereby presents its Motions in Limine and Brief in Support.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENTS AND AUTHORITIES ............................................................... 4

    **A.**  Motion in Limine Standard .............................................................. 4

    **B.**  Relevance and Unfair Prejudice Standards ...................................... 5

DEFENDANT'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE REFERENCES TO ALLEGED MISCONDUCT BY EMPLOYEES WHO ARE NOT SIMILARLY SITUATED, INCLUDING BUT NOT LIMITED TO REFERENCES TO SOCIAL MEDIA ACTIVITY WHERE NO COMPLAINTS WERE RECEIVED BY DEFENDANT AND THE CONDUCT DID NOT INVOLVE RACE-BASED OR SEX-BASED STEREOTYPING ............... 5

DEFENDANT'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE REFERENCES TO POST-RENEWAL ACTIVITY ............................................................... 10

DEFENDANT'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE REFERENCES TO DISMISSED HOSTILE WORK ENVIRONMENT ALLEGATIONS .................. 11

DEFENDANT'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE REFERENCES TO PLAINTIFF HAVING BEEN ACCUSED AND EXONERATED OF CREATING A HOSTILE WORK ENVIRONMENT .................................................. 11

DEFENDANT'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE REFERENCES TO DEFENDANT'S EMPLOYEE HANDBOOK AS NOT INCLUDING DEFENDANT'S SOCIAL MEDIA POLICY .................................................. 12

DEFENDANT'S MOTION *IN LIMINE* NO. 6 TO EXCLUDE REFERENCES TO ALLEGEDLY DENIED PROMOTIONS THAT ARE NOT CLAIMS IN THE CASE ............................................................................................... 13

DEFENDANT'S MOTION *IN LIMINE* NO. 7 TO EXCLUDE REFERENCES TO SCHEDULE CHANGES PLAINTIFF ALLEGES TO HAVE BEEN DISCRIMINATORY ..................................................................................... 14

DEFENDANT'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE REFERENCES TO NBC OPINION PIECE ........................................................................... 15

DEFENDANT'S MOTION *IN LIMINE* NO. 9 TO EXCLUDE REFERENCES TO THURMAN DOMESTIC VIOLENCE ARREST ................................... 16

DEFENDANT'S MOTION *IN LIMINE* NO. 10 TO EXCLUDE REFERENCES TO PLAINTIFF BEING "FIRED" OR "TERMINATED" ................. 17

DEFENDANT'S MOTION *IN LIMINE* NO. 11 TO EXCLUDE REFERENCES TO "LEADERSHIP CHAMPION" POSITION ..............................................................18

DEFENDANT'S MOTION *IN LIMINE* NO. 12 TO EXCLUDE RUBY HAMAD AS A WITNESS ..........................................................................................19

DEFENDANT'S MOTION *IN LIMINE* NO. 13 TO EXCLUDE THE "OLD WHITE GUY" ALLEGATION BY SPORTS ANCHOR, DEE JACKSON ................20

    **1.**    The Statement Was Not About Plaintiff ..........................................................21

    **2.**    The Statement Was Not About the Decisional Process Related to Plaintiff.................................................................................................................21

    **3.**    The Statement Was Not About Race ..............................................................22

    **4.**    The Statement Was a Stray Remark ...............................................................22

DEFENDANT'S MOTION *IN LIMINE* NO. 14 TO EXCLUDE REFERENCES TO EMOTIONAL DISTRESS ..........................................................23

**1.** Evidence or testimony reflecting or relying on a medical diagnosis or opinion should be excluded......................................................................................................................... 24

**2.** Lay evidence speculating a medical diagnosis should be excluded. .................................... 25

**3.** Plaintiff should not be permitted to argue or refer to undiagnosed medical conditions as being "caused by" Defendant's alleged conduct. ................................................................. 27

DEFENDANT'S MOTION *IN LIMINE* NO. 15 TO EXCLUDE EVIDENCE, DOCUMENTS, AND WITNESSES NOT TIMELY DISCLOSED.............................29

DEFENDANT'S MOTION *IN LIMINE* NO. 16 TO EXCLUDE REFERENCES TO THE SIZE, RESOURCES, OR LOCATIONS OF DEFENDANT'S WITNESSES, REPRESENTATIVES, OR ITS COUNSEL .............31

DEFENDANT'S MOTION *IN LIMINE* NO. 17 TO EXCLUDE EVIDENCE RELATED TO DISCRIMINATION NOT ALLEGED BY PLAINTIFF.....................34

DEFENDANT'S MOTION *IN LIMINE* NO. 18 TO EXCLUDE REFERENCES TO ADAM SYMSON'S JUNE 28, 2018 EMAIL ENTITLED, "HERE'S WHAT'S ON MY MIND"..........................................................................35

DEFENDANT'S MOTION IN LIMINE NO. 19 TO EXCLUDE REFERENCES TO THE PROMOTION OF AN IN-HOUSE EMPLOYMENT LAWYER TO THE TITLE TO VICE-PRESIDENT, EMPLOYMENT AND LABOR LAW, AND CHIEF DIVERSITY OFFICER AND/OR ANY REFERENCES TO THE HIRING OR PROMOTION OF OTHER AFRICAN-AMERICAN EMPLOYEES..........................................................................................39

DEFENDANT'S MOTION *IN LIMINE* NO. 20 TO EXCLUDE
REFERENCES TO OTHER KSHB EMPLOYEES' FAILURE TO GRANT
FACEBOOK ADMINISTRATIVE RIGHTS TO STATION MANAGEMENT ..........40

DEFENDANT'S MOTION *IN LIMINE* NO. 21 TO EXCLUDE
REFERENCES TO POTENTIAL INSURANCE COVERAGE FOR ANY
DAMAGES AWARDED TO PLAINTIFF OR REFERENCE TO ANY
INTEREST OF DEFENDANT IN SETTLING THE LAWSUIT..................................41

DEFENDANT'S MOTION *IN LIMINE* NO. 22 TO EXCLUDE
REFERENCES TO PLAINTIFF'S ALLEGED COVERAGE OF THE KKK..............41

DEFENDANT'S MOTION *IN LIMINE* NO. 23 TO EXCLUDE
REFERENCES TO PLAINTIFF'S COVERAGE OF THE "URBAN CORE".............42

DEFENDANT'S MOTION *IN LIMINE* NO. 24 TO EXCLUDE
REFERENCES TO PLAINTIFF BEING REQUIRED TO MMJ WHILE
PREGNANT ...........................................................................................................43

DEFENDANT'S MOTION *IN LIMINE* NO. 25 TO EXCLUDE REFERENCES
TO PLAINTIFF'S ALLEGED PURSUIT OF THE ANCHOR POSITION
WHICH LINDSAY SHIVELY RECEIVED....................................................................44

DEFENDANT'S MOTION *IN LIMINE* NO. 26 TO EXCLUDE REFERENCES
TO MEDIA COVERAGE DURING THE TRIAL ........................................................45

DEFENDANT'S MOTION *IN LIMINE* NO. 27 TO EXCLUDE EVIDENCE
OR ALLEGATIONS RELATING TO THIS COURT'S IN LIMINE RULINGS
CONCERNING TAX RETURNS ................................................................................45

DEFENDANT'S MOTION *IN LIMINE* NO. 28 EXCLUDING EVIDENCE OR
ALLEGATIONS DEFENDANT ACTED WRONGFULLY OR IMPROPERLY
BY RELYING ON EVIDENCE OF PLAINTIFF'S TAX INFORMATION
THAT WAS LEARNED DURING THE PENDENCY OF THIS LAWSUIT..............47

DEFENDANT'S MOTION *IN LIMINE* NO. 29 TO EXCLUDE ARGUMENT
AND/OR EVIDENCE INDICATING THAT DEFENDANT ACTED
UNLAWFULLY OR WRONGLY BY NOT DEMONSTRATING OTHER
EXAMPLES OF TAKING ACTION AGAINST EMPLOYEES
CONCERNING TAX RETURNS AND/OR SEEKING OUT TAX
INFORMATION FROM EMPLOYEES........................................................................48

DEFENDANT'S MOTION *IN LIMINE* NO. 30 TO EXCLUDE REFERENCES
TO THE VIEWS OF HER LAWYER OR TO ARGUMENTS MADE BY HER
LAWYER BECAUSE HE CANNOT SERVE AS A WITNESS IN THIS CASE
WHILE ALSO SERVING AS COUNSEL ..................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advantage Media, L.L.C. v. City of Eden Prairie,*
456 F.3d 793 (8th Cir. 2006) ...................................................................................18, 44

*Allen v. Johnson,*
2014 WL 7334901 (M.D. La. Dec. 19, 2014)...........................................................42, 43, 44

*Alvarez* v. *Des Moines Bolt Supply, Inc,*
626 F.3d 410 (8th Cir. 2010) ...................................................................................47, 49

*Anderson v. Consolidated Rail Corp.,*
2000 WL 1201534 (E.D. Penn. Aug. 9, 2000) ........................................................38

*Aulick v. Skybridge Americas, Inc.,*
860 F.3d 613 (8th Cir. 2017) ...................................................................................20, 23

*Barber v. CI Truck Driver Training, LLC,*
656 F.3d 782 (8th Cir. 2001) ...................................................................................48

*Bartell v. Govoreau,*
2005 WL 5989792 (W.D. Mo. Sept. 23, 2005) ......................................................20

*Bauer v. Metz Baking Co.,*
59 F. Supp. 2d 896 (N.D. Iowa 1999).....................................................................22

*Betz v. Chertoff,*
578 F.3d 929 (8th Cir. 2009) ...................................................................................17

*Bowie v. Maddox,*
642 F.3d 1122 (D.C. Cir. 2011)...............................................................................11, 38

*Browning v. President Riverboat Casino-Missouri, Inc.,*
139 F.3d 631 (8th Cir. 1998) ...................................................................................37

*Buettner v. Arch Coal Sales Co., Inc.,*
216 F.3d 707 (8th Cir. 2000) ...................................................................................34

*Burrow v. Boeing Co.,*
2011 WL 1594937 (E.D. Mo. April 27, 2011) ........................................................23

*Certain Underwriters at Lloyd's v. SSDD, LLC,*
No. 4:13-CV-193 CAS, 2014 WL 3384703 (E.D. Mo. July 10, 2014).................30

*Charter v. Chleborad,*
551 F.2d 246 (8th Cir. 1977) ...................................................................................41

*Cherry v. Riternour Sch. Dist.*,
361 F.3d 474 (8th Cir. 2004), 361 F.3d ................................................................6

*Clearwater v. Indep't School Dist. No. 166*,
231 F.3d 1122 (8th Cir. 2000) .........................................................................21

*Curry v. U.S.*,
2018 WL 347661 (E.D. Cal. Jan. 9, 2018) .......................................................24

*Davis v. Town of Lake Park, Fla.*,
245 F.3d 1232 (11th Cir. 2001) .......................................................................18

*State ex rel. Dean v. Cunningham*,
182 S.W. 3d 561 (Missouri 2006) (en banc).....................................................26

*Duggan v. Sisters of Charity Providence Hospitals*,
663 F. Supp. 2d 456 (D. S.C. 2009)...................................................................8

*Eggering v. MHP, Inc.*,
2011 WL 6029956 (E.D. Mo. Dec. 5, 2011) ....................................................28

*Evance v. Truman Health Services, LLC*,
719 F. 3d 673 (8th Cir. 2013) ......................................................................7, 48

*First Savings Bank, F.S.B. v. U.S. Bancorp*,
117 F. Supp. 2d 1078 (D. Kan. 2000).................................................................4

*Flowers v. Owens*,
274 F.R.D. 218 (N.D. Ill. 2011).......................................................................26

*Gacek v. Owens & Minor Distribution, Inc.*,
666 F.3d 1142 (8th Cir. 2012) .....................................................................9, 40

*Goddard v. City of Atlanta*,
2007 WL 9700876 (N.D. Ga. Aug. 10, 2007) ....................................................8

*Green v. City of St. Louis, Mo.*,
507 F.3d 662 (8th Cir. 2007) .....................................................................11, 38

*Hale Cnty. A&M Transp., LLC v. City of Kansas City, Mo.*,
No. 4:12-CV-00265-DGK, 2014 WL 545779 (W.D. Mo. Feb. 11, 2014) ...........33

*Harvey v. Wal-Mart Stores, Inc.*,
33 F.3d 969 (8th Cir. 1994) ..............................................................................5

*Hodak v. City of St. Peters*,
No. 4:04CV01099ERW, 2006 WL 521489 (E.D. Mo. Mar. 2, 2006)..................25

*Hughes v. Stottlemyre*,
    454 F.3d 791 (8th Cir. 2006) ............................................... 15

*Hutton v. Maynard*,
    812 F.3d 679 (8th Cir. 2016) ...........................................37, 39

*I-Sys., Inc. v. Softwares, Inc.*,
    No. CIV.021951, 2005 WL 1430323 (D. Minn. Mar. 7, 2005)............32

*Jackson v. Asplundh Construction Corp.*,
    2016 WL 5941937 (E.D. Mo. Oct. 13, 2016) .............................27

*Jackson v. Chubb Corp.*,
    193 F.R.D. 216 (D.N.J. 2000).............................................28

*Jamison v. Storer Broad. Co.*,
    511 F.Supp. 1286 (E.D. Mich. 1981).......................................5

*Johnson v. City of North Myrtle Beach*,
    2012 WL 848038 (D. S.C. Jan. 25, 2012)..................................8

*Jordan v. U.S. Bank*,
    2008 WL 2783229 (E.D. Mo. July 15, 2008) ...........................11, 38

*Kerns v. Capital Graphics, Inc.*,
    178 F.3d 1011 (8th Cir. 1999) ............................................21

*Kiel v. Select Artificials, Inc.*,
    169 F.3d 1131 (8th Cir. 1999) ..........................................47, 49

*King v. City and County of San Francisco*,
    2012 WL 3877673 (N.D. Cal. Sept. 6, 2012) ............................18

*Knight v. Fourteen D. Enterprises, Inc.*,
    995 F. Supp. 2d 1311 (S.D. Ala. 2014).....................................8

*Ladry v. Lincare, Inc.*,
    579 F. App'x 734 (11th Cir. 2014) .........................................8

*Lidle v. Cirrus Design Corp.*,
    2011 WL 1642339 (S.D.N.Y. April 25, 2011) ............................20

*Littleton v. Pilot Travel Centers, LLC*,
    568 F.3d 641 (8th Cir. 2009) ...........................................12, 44

*Lovell v. Brinker Int'l, Inc.*,
    1997 WL 570457 (W.D. Mo. June 27, 1997) .............................23

*Luce v. United States*,
    469 U.S. 38, 105 S.Ct. 460, 83 L. Ed. 2d 443 (1984)..................................................4

*Macon v. United Parcel Service, Inc.*,
    743 F.3d 708 (10th Cir. 2014) ........................................................................8

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006) ........................................................................30

*McGinnis v. Soo Line R. Co.*,
    2014 WL 813858 (D. Minn. March 3, 2014).............................................22

*McKennon v. Nashville Banner Publishing Co.*,
    513 U.S. 252 (1995)..............................................................................47, 48

*Mohr v. Dustrol, Inc.*,
    306 F.3d 636 (8th Cir. 2002), abrogated on other grounds by *Desert Palace,
    Inc. v. Costa*, 539 U.S. 90 (2003)..............................................................21

*Moody v. Vozel*,
    771 F.3d 1093 (8th Cir. 2014) .....................................................................37

*Perry v. Mail Contractors of America, Inc.*,
    2013 WL 6119226 (W.D. N.C. Nov. 21, 2013)............................................8

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) (O'Connor, J., concurring)......................................37

*D.P. ex rel. Pugh v. Bowling Green R-1 School Dist.*,
    No. 2:11cv00054, 2012 WL 918184 (E.D. Mo. March 19, 2012)...........26

*Roddy v. Monsanto Co.*,
    6 Fed. App'x 549 (8th Cir. 2001) ...............................................................42

*Rodgers v. U.S. Bank, N.A.*,
    417 F.3d 845 (8th Cir. 2005), abrogated on other grounds by *Torgerson v.
    City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc)................6, 10

*Sappington v. Skyjack Inc.*,
    No. 04-5076-CV-SW-FJG, 2008 WL 895222 (W.D. Mo. Mar. 27, 2008) .....31, 32

*Sellers v. Deere & Co.*,
    No. C12-2050, 2014 WL 59928, at *1 (N.D. Iowa Jan. 7, 2014), *on
    reconsideration in part*, No. C12-2050, 2014 WL 468242 (N.D. Iowa Feb. 5,
    2014..................................................................................................................36

*Sellers v. Mineta*,
    350 F.3d 706 (8th Cir. 2003) .......................................................................30

*Serrano v. Cintas Corp.*,
    699 F.3d 884 (6th Cir. 2012) ...................................................................................36

*Smith v. Don's Paint and Body Shop*,
    2005 WL1124738 (D. Minn. May 11, 2005)..................................................22, 23

*Sommerfield v. City of Chicago*,
    863 F.3d 645 (7th Cir. 2017) ...................................................................................43

*Summers v. City of Dothan*,
    757 F. Supp. 2d 1184 (M.D. Ala. 2010) ....................................................................7

*Tanner v. City of Sullivan*,
    2013 WL 121476 (E.D. Mo. Jan. 9, 2013) .............................................................27

*Torgerson v. City of Rochester*,
    643 F.3d 1031 (8th Cir. 2011) .........................................................................20, 21

*Troknya v. Cleveland Chiropractic Clinic*,
    280 F.3d 1200 (8th Cir. 2002) ...............................................................................30

*Twymon v. Wells Fargo & Co.*,
    462 F.3d 925 (8th Cir. 2006) ...................................................................................37

*United States v. Betcher*,
    534 F.3d 820 (8th Cir. 2008) ...................................................................................41

*United States v. Castell*,
    584 F.2d 87 (5th Cir. 1978), *cert. denied* 440 U.S. 925, 99 S.Ct. 1256, 59 L.
    Ed. 2d 480 (1979) ......................................................................................................5

*United States v. Dennis*,
    625 F.2d 782 (8th Cir. 1980) ...................................................................................35

*United States v. Johnson*,
    463 F.3d 803 (8th Cir. 2006) ...................................................................................42

*United States v. Romano*,
    849 F.2d 812 (3d Cir. 1988).......................................................................................4

*Veliz v. City of Minneapolis*,
    2008 WL4544433 (D. Minn. Oct. 9, 2008) ............................................................37

*Weesner v. U.S. Bancorp*,
    2011 WL 4471765 (D. Minn. 2011) ..................................................................47, 49

*Wheeler v. Aventis Pharmaceuticals*,
    360 F.3d 853 (8th Cir. 2004) ...................................................................................48

*" Wierman v. Casey's Gen. Stores,*
  638 F. 3d 984 (8th Cir. 2011), 638 F.3d .............................................................................6

*M.W. ex rel. Williams v. Avilla R-XIII School Dist.,*
  2011 WL 3354933 (W.D. Mo. Aug. 3, 2011)...............................................................18, 44

*Williams v. Trans States Airlines, Inc.,*
  281 S.W. 3d 854 (Mo. Ct. App. 2009).................................................................................26

*Winter v. Novartis Pharm. Corp.,*
  No. 06-4049-CV-C-MJW, 2012 WL 827245 (W.D. Mo. Mar. 8, 2012) ..............................32

*Young v. City of St. Charles,*
  244 F.3d 623 (8th Cir. 2001) .............................................................................................48

**Statutes**

29 U.S.C. § 28 ...........................................................................................................25, 27, 49

**Rules**

Fed. R. Civ. P. 26 .......................................................................................................29, 30, 31

Fed. R. Civ. P. 26(a)(1)(A) .................................................................................................29

Fed. R. Civ. P. 26(a)(3) ......................................................................................................29

Fed. R. Civ. P. 26(e) ...........................................................................................................29

Fed. R. Evid. 401 ......................................................................................................5, 32, 37

Fed. R. Evid. 402 .................................................................................................5, 32, 34, 45

Fed. R. Evid. 403 ................................................................................................... *passim*

Fed. R. Evid. 411 ................................................................................................................41

Fed. R. Evid. 701 ................................................................................................................27

Fed. R. Evid. 802 ................................................................................................................45

## I.    <u>INTRODUCTION</u>

Defendant moves this Court to instruct counsel for Plaintiff, Plaintiff, and Plaintiff's witnesses not to mention within the hearing of the jury panel, in voir dire examination, upon any reading of the pleadings, the statement of the case, upon interrogation of witnesses, by argument, or by objection in the presence of the jury any of the matters hereinafter set forth, either directly or indirectly, until such matter has been called to the Court's attention out of the presence and hearing of the jury, and a ruling had by the Court as to the competency of the material. It is further moved that counsel for Plaintiff be instructed to apprise each of Plaintiff's witnesses including Plaintiff, of the content of any Order relating to this Motion and that such Order must not be inadvertently violated by any witness.

Therefore, to ensure that the jury is not influenced or misled by such evidence, Defendant requests an Order prior to trial directing Plaintiff, her counsel, and her witnesses from testifying or presenting evidence regarding:

- **DEFENDANT'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE REFERENCES TO ALLEGED MISCONDUCT BY EMPLOYEES WHO ARE NOT SIMILARLY SITUATED, INCLUDING BUT NOT LIMITED TO REFERENCES TO SOCIAL MEDIA ACTIVITY WHERE NO COMPLAINTS WERE RECEIVED BY DEFENDANT AND THE CONDUCT DID NOT INVOLVE RACE-BASED OR SEX-BASED STEREOTYPING**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE REFERENCES TO POST-RENEWAL ACTIVITY**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE REFERENCES TO DISMISSED HOSTILE WORK ENVIRONMENT ALLEGATIONS**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE REFERENCES TO PLAINTIFF HAVING BEEN ACCUSED AND EXONERATED OF CREATING A HOSTILE WORK ENVIRONMENT**

1

- **DEFENDANT'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE REFERENCES TO DEFENDANT'S EMPLOYEE HANDBOOK AS NOT INCLUDING DEFENDANT'S SOCIAL MEDIA POLICY**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 6 TO EXCLUDE REFERENCES TO ALLEGEDLY DENIED PROMOTIONS THAT ARE NOT CLAIMS IN THE CASE**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 7 TO EXCLUDE REFERENCES TO SCHEDULE CHANGES PLAINTIFF ALLEGES TO HAVE BEEN DISCRIMINATORY**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE REFERENCES TO NBC OPINION PIECE**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 9 TO EXCLUDE REFERENCES TO THURMAN DOMESTIC VIOLENCE ARREST**

  **DEFENDANT'S MOTION *IN LIMINE* NO. 10 TO EXCLUDE REFERENCES TO PLAINTIFF BEING "FIRED" OR "TERMINATED"**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 11 TO EXCLUDE REFERENCES TO "LEADERSHIP CHAMPION" POSITION**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 12 TO EXCLUDE RUBY HAMAD AS A WITNESS**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 13 TO EXCLUDE THE "OLD WHITE GUY" ALLEGATION BY SPORTS ANCHOR, DEE JACKSON**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 14 TO EXCLUDE REFERENCES TO EMOTIONAL DISTRESS**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 15 TO EXCLUDE EVIDENCE, DOCUMENTS, AND WITNESSES NOT TIMELY DISCLOSED**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 16 TO EXCLUDE REFERENCES TO THE SIZE, RESOURCES, OR LOCATIONS OF DEFENDANT'S WITNESSES, REPRESENTATIVES, OR ITS COUNSEL**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 17 TO EXCLUDE EVIDENCE RELATED TO DISCRIMINATION NOT ALLEGED BY PLAINTIFF**

- **DEFENDANT'S MOTION IN LIMINE NO. 18 TO EXCLUDE REFERENCES TO ADAM SYMSON'S JUNE 28, 2018 EMAIL ENTITLED, "Here's what's on my mind"**

- **DEFENDANT'S MOTION IN LIMINE NO. 19 TO EXCLUDE REFERENCES TO THE PROMOTION OF AN IN-HOUSE EMPLOYMENT LAWYER TO THE TITLE TO VICE-PRESIDENT, EMPLOYMENT AND LABOR LAW, AND CHIEF DIVERSITY OFFICER AND/OR ANY REFERENCES TO THE HIRING OR PROMOTION OF OTHER AFRICAN-AMERICAN EMPLOYEES**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 20 TO EXCLUDE REFERENCES TO OTHER KSHB EMPLOYEES' FAILURE TO GRANT FACEBOOK ADMINISTRATIVE RIGHTS TO STATION MANAGEMENT**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 21 TO EXCLUDE REFERENCES TO POTENTIAL INSURANCE COVERAGE FOR ANY DAMAGES AWARDED TO PLAINTIFF OR REFERENCE TO ANY INTEREST OF DEFENDANT IN SETTLING THE LAWSUIT**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 22 TO EXCLUDE REFERENCES TO PLAINTIFF'S ALLEGED COVERAGE OF THE KKK**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 23 TO EXCLUDE REFERENCES TO PLAINTIFF'S COVERAGE OF THE "URBAN CORE"**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 24 TO EXCLUDE REFERENCES TO PLAINTIFF BEING REQUIRED TO MMJ WHILE PREGNANT**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 25 TO EXCLUDE REFERENCES TO PLAINTIFF'S ALLEGED PURSUIT OF LINDSAY SHIVELY'S ANCHOR POSITION**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 26 TO EXCLUDE REFERENCES TO MEDIA COVERAGE DURING THE TRIAL**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 27 TO EXCLUDE EVIDENCE OR ALLEGATIONS RELATING TO THIS COURT'S IN LIMINE RULINGS CONCERNING TAX RETURNS**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 28 EXCLUDING EVIDENCE OR ALLEGATIONS DEFENDANT ACTED WRONGFULLY OR IMPROPERLY BY RELYING ON EVIDENCE OF PLAINTIFF'S TAX INFORMATION THAT WAS LEARNED DURING THE PENDENCY OF THIS LAWSUIT**

- **DEFENDANT'S MOTION *IN LIMINE* NO. 29 TO EXCLUDE ARGUMENT AND/OR EVIDENCE INDICATING THAT DEFENDANT ACTED UNLAWFULLY OR WRONGLY BY NOT DEMONSTRATING OTHER EXAMPLES OF TAKING ACTION AGAINST EMPLOYEES CONCERNING TAX RETURNS AND/OR SEEKING OUT TAX INFORMATION FROM EMPLOYEES**

  **DEFENDANT'S MOTION *IN LIMINE* NO. 30 TO EXCLUDE REFERENCES TO THE VIEWS OF HER LAWYER OR TO ARGUMENTS MADE BY HER LAWYER BECAUSE HE CANNOT SERVE AS A WITNESS IN THIS CASE WHILE ALSO SERVING AS COUNSEL**

**II.     ARGUMENTS AND AUTHORITIES**

    **A.     Motion in Limine Standard**

Neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence address or specifically authorize motions in limine; however, such requests to trial courts, and the granting of such motions by those courts, have become fairly routine practice, being recognized as an element of a court's inherent authority to manage trials and minimize unavoidable delay. *See Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L. Ed. 2d 443 (1984). Courts have held that the purpose of motions in limine is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. *First Savings Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000) (citations omitted). Further, "[a] trial judge has a duty to limit the jury's exposure to only that which is probative and relevant and must attempt to screen from the jury any proffer that it deems irrelevant. In order to fulfill this duty, the court may utilize a number of vehicles, including the use of an in limine order." *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988)(citation omitted).

Defendant respectfully submits to the Court that the following discussed issues are the types of issues which meet the purpose for granting a motion in limine and which fall within the Court's authority for addressing the issues pursuant to an *in limine* motion.

## B.     Relevance and Unfair Prejudice Standards

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence which is not relevant is not admissible. Fed. R. Evid. 402. Additionally, even if relevant, the Federal Rules of Evidence prohibit the introduction of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Harvey v. Wal-Mart Stores, Inc.*, 33 F.3d 969 (8th Cir. 1994).

Further, a court must evaluate proffered evidence to determine if it would lead to jury confusion. *See Jamison v. Storer Broad. Co.*, 511 F.Supp. 1286, 1294 (E.D. Mich. 1981). When a trial judge determines that proffered evidence presents a danger of confusing the issues or misleading the jury and that this danger outweighs its probative value, the evidence should be excluded. *See United States v. Castell*, 584 F.2d 87, 89 (5th Cir. 1978), *cert. denied* 440 U.S. 925, 99 S.Ct. 1256, 59 L. Ed. 2d 480 (1979). If the evidence is not offered for a proper purpose or will be unfairly prejudicial to the opposing party, the evidence must be excluded.

## DEFENDANT'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE REFERENCES TO ALLEGED MISCONDUCT BY EMPLOYEES WHO ARE NOT SIMILARLY SITUATED, INCLUDING BUT NOT LIMITED TO REFERENCES TO SOCIAL MEDIA ACTIVITY WHERE NO COMPLAINTS WERE RECEIVED BY DEFENDANT AND THE CONDUCT DID NOT INVOLVE RACE-BASED OR SEX-BASED STEREOTYPING

"To be similarly situated, 'the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, ***and engaged in the same conduct without any mitigating or distinguishing circumstances.'*** *Wierman v. Casey's Gen. Stores,* 638

F. 3d 984, 994 (8th Cir. 2011), 638 F.3d at 994 (quoting *Cherry v. Riternour Sch. Dist.,* 361 F.3d 474, 479 (8th Cir. 2004), 361 F.3d at 479) (emphasis added).  The test for determining whether employees are similarly situated to a plaintiff is a **rigorous** one. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005), abrogated on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043, 1058 (8th Cir. 2011) (en banc).  Defendant hereby moves *in limine* to exclude any evidence, testimony, or references thereto at trial which relate to social media activity by other KSHB employees about which no complaints were received by the decisionmakers relating to race, sex, or other protected status and to any other alleged conduct for which the employee is not similarly situated.

Here, Plaintiff's contract was not renewed in June 2018 following her co-workers' complaints concerning her Facebook posting or sharing the article 1) "How White Women Cry to Avoid Accountability" that was found to violate the company's social media policy prohibiting negative stereotypical comments based on race or sex; 2) her posting or sharing of a meme on Facebook referencing "Burning Down a Village" that was deemed threatening; 3) her disingenuous responses during the company's investigation of her co-workers' complaints as found by the outside investigator; and  4) her tax filing failures over several years' time contrary to her contract.

Plaintiff should be prohibited from introducing evidence of alleged wrongdoing by other employees that do not involve the same conduct concerning all four reasons for her non-renewal. **For example, as the Court indicated at the parties' November 16 evidentiary hearing, the Plaintiff's attempts to introduce evidence concerning Ms. McMaster's social media activity is not relevant because no one complained to the decisionmaker's in this case concerning any of her social media conduct.** (Dkt. No. 257 at pg. 12, lines 22-25) ("Mr. Meyers, given the fact

that this is a retaliation claim and there's no evidence that anyone complained about any post…made, then how is this information in any way relevant").   Based on questions Plaintiff's counsel has asked at some of the seven depositions since the reopening of discovery, Defendant anticipates that he will attempt to introduce various social media activity of employees for which no one complained and which do not involve stereotypes on the basis of race, sex, or other protected statuses.

As this Court correctly recognized, the absence of a complaint concerning employees' alleged misconduct differentiates that employee from other employees.   As explained in depositions, Defendant does not police its employees social media accounts for violations and this practice is consistent with the practice of other TV stations in the industry as confirmed by Defendant's expert Dr. Beth Knobel.   Employers are not required to demonstrate examples of enforcing policy violations against employees other than the Plaintiff who was accused of misconduct by third parties unlike others.   *See Evance v. Truman Health Services, LLC*, 719 F. 3d 673, 678 (8th Cir. 2013) (The aim of anti-discrimination laws is to prevent discrimination in the workplace, not to scrutinize an employer's procedure for uncovering workplace violations by its employees.); *Summers v. City of Dothan*, 757 F. Supp. 2d 1184, 1208 (M.D. Ala. 2010). Accordingly, courts throughout the country have recognized that it is not enough to merely identify someone else alleged to have engaged in the same misconduct – the plaintiff must show that the same decisionmaker knew of the misconduct and consciously overlooked it. *Perry v. Mail Contractors of America, Inc*., 2013 WL 6119226, at *6 (W.D. N.C. Nov. 21, 2013) ("[U]nless the plaintiff can prove the decisionmaker knows of the [comparator's misconduct] the events cannot be considered in determining whether [plaintiff and his comparators] are similarly situated." (internal quotations and citations omitted)); *Macon v. United Parcel Service, Inc*., 743 F.3d 708,

719-20 (10th Cir. 2014); *see also Ladry v. Lincare, Inc.*, 579 F. App'x 734, 738 (11th Cir. 2014); *Knight v. Fourteen D. Enterprises, Inc.*, 995 F. Supp. 2d 1311, 1329 (S.D. Ala. 2014); *Johnson v. City of North Myrtle Beach*, 2012 WL 848038, at *9 (D. S.C. Jan. 25, 2012); *Duggan v. Sisters of Charity Providence Hospitals*, 663 F. Supp. 2d 456, 463 (D. S.C. 2009); *Goddard v. City of Atlanta*, 2007 WL 9700876, at *14 (N.D. Ga. Aug. 10, 2007). No such evidence is present here.

By way of example, Plaintiff has grilled witnesses during depositions with a social media post from KSHB Chief Meteorologist, Gary Lezak who announced his same-sex engagement on social media and that Plaintiff believes is somehow inappropriate. Mr. Lezak's posting that involves his own engagement and marriage is constitutionally protected and no one complained to the decisionmakers that his posting violated the Social Media Policy or Code of Conduct prohibiting negative comments based on race, sex, or other protected status. It is instead Plaintiff who is trying to introduce this evidence in a transparent attempt to inflame jury members who may be opposed to constitutionally protected same sex marriage and confuse the issues in this case in violation of Rule 403. Similarly, Plaintiff is expected to attempt to reference many other social media activity of numerous others, including but not limited to that of investigative reporter, Jessica McMaster (relating to her exchange with former reporter Terra Hall regarding the President); evening anchor, Mike Marusarz (regarding the President's cancelation of meeting with the Philadelphia Eagles); Digital Director, Kent Chapline (regarding NFL cheerleaders), all in efforts to argue that these individuals were not disciplined for social media posts that had the potential to somehow offend KSHB employees and viewers. As stated above, the decisionmakers did not receive complaints involving these postings and they did not involve stereotyping of a group based on race or sex. In addition to these posts, Defendant anticipates that for every witness that testifies on behalf of or whose testimony is favorable to Defendant, Plaintiff will attempt to

confront them with some social media posts from their past that Plaintiff will construe as being potentially a violation of Scripps' Social Media Policy. Notwithstanding, any such testimony and accompanying social media evidence will do nothing more than confuse the jury with testimony that is not relevant to the actual claims or defenses in this case and will serve to put witnesses on trial, will prolong testimony time needlessly and significantly, and will obscure the actual questions at issue in this trial. Moreover, the social media posts that Plaintiff will offer will be distinctly different from her own post in myriad ways, including that Defendant did not receive complaints to the decisionmakers in Plaintiff's non-renewal or HR about those other posts and they did not involve stereotyping based on race or sex, prompting investigation that ultimately led to the conclusion that such posts violated the company's Social Media Policy. Further, Defendant's social media policy by its own terms treats offensive posts based on race or sex differently in that termination is mentioned only in the section warning against such offensive conduct based on race or sex and incorporating the Code of Conduct. Defendant, consistent with the law and with its zero tolerance policy for race and sex-based conduct, may treat violations involving race or sex more seriously and to not police social media activity, consistent with industry standards. *Gacek v. Owens & Minor Distribution, Inc.*, 666 F.3d 1142, 1147 (8th Cir. 2012) (refusing to consider the discipline of other employees for violations of the same policies because their conduct was not of "comparable seriousness" with plaintiff's conduct). Plaintiff's attempt to make irrelevant comparisons would prejudice Defendant by substituting the judgment of Plaintiff's lawyers in the minds of the jury for the business judgment of Defendant.

Further, even if the social media activity was—contrary to fact—comparable to Plaintiff's post involving "How white women use strategic tears to avoid accountability" and others complained, **Plaintiff's contract was not renewed for three other reasons too. To be similarly**

situated, **Plaintiff would also need to identify another employee who has made threatening posts about burning down a village, who was disingenuous in an investigation concerning her alleged misconduct, and who also engaged in tax violations contrary to their contract. This she cannot do and she must be precluded from referencing other employees who did not engage in the same conduct based on the Eighth Circuit's "rigorous" test to determine whether employees are similarly situated.** *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir.2005), abrogated on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043, 1058 (8th Cir.2011) (en banc). Such evidence that lacks relevancy as not similarly situated also serves to unduly prejudice Defendant under Rule 403, confuse the issues and delay the trial with countless rebuttals and other witnesses to testify concerning postings that are not relevant in this case in the first place.

Accordingly, references to employees whose social media activity cannot properly be compared to that of Plaintiff's should not be admitted at trial.

### DEFENDANT'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE REFERENCES TO POST-RENEWAL ACTIVITY

Defendant moves to exclude any evidence, testimony, or references thereto at trial which relate to any activity, conduct or decisions made by Defendant **after** its decision to not renew Plaintiff's contract on June 7, 2018 and after Scripps' management communicated the same to Plaintiff on June 12, 2018. Defendant anticipates that Plaintiff will seek to introduce at trial evidence of conduct by Defendant relating to decisions or discussions post-dating the June 7, 2018 non-renewal decision and June 12, 2018 meeting between Scripps and Plaintiff regarding same.

Logically, any decision, conduct, or communications occurring *after* Plaintiff's separation from Scripps cannot be relevant to her claim, nor can any such matters support her burden of proving intentional **retaliation** because such burden can only be supported by actions that occurred

at the time of (not after) the allegedly retaliatory act occurred. *Green v. City of St. Louis, Mo.*, 507 F.3d 662, 669 (8th Cir. 2007) (holding trial court did not abuse discretion in holding post-termination statements were not relevant to earlier termination); *Jordan v. U.S. Bank*, 2008 WL 2783229, n. 1 (E.D. Mo. July 15, 2008) (excluding paragraphs from submitted Statement of Facts because the events occurred post-termination and therefore were not relevant to the termination); *see also Bowie v. Maddox*, 642 F.3d 1122, 1134-35 (D.C. Cir. 2011).   For the foregoing reasons, Defendant requests that Plaintiff not be permitted to introduce evidence of activity, discussions, communications, conduct or decisions purportedly in support of her retaliation claim by Defendant *after* the June 12, 2018 meeting during which she was advised of Defendant's non-renewal decision.

## DEFENDANT'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE REFERENCES TO DISMISSED HOSTILE WORK ENVIRONMENT ALLEGATIONS

Defendant hereby moves *in limine* to exclude any evidence, testimony, or references thereto at trial to Plaintiff's dismissed hostile work environment claims. All such claims were dismissed by the Court's April 2, 2018 Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment and any attempt to reference a hostile work environment, toxic work environment, or harassment of Plaintiff would be improper and should be excluded. *Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 648 (8th Cir. 2009) (affirming district court's exclusion of evidence related to dismissed retaliation claims in employment).

## DEFENDANT'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE REFERENCES TO PLAINTIFF HAVING BEEN ACCUSED AND EXONERATED OF CREATING A HOSTILE WORK ENVIRONMENT

Defendant hereby moves *in limine* to exclude any evidence, testimony, or references thereto at trial concerning Plaintiff's assertion that she was charged with creating a "hostile work

environment" in May 2018 and exonerated of that charge. It is undisputed that neither the Social Media Policy nor the Code of Conduct required Scripps to find conduct meeting the **legal definition** of a hostile work environment before taking action for improper social media conduct, and Scripps did not make any such finding with regard to Plaintiff before deciding not to renew her contract. Scripps' Social Media Policy and Code of Conduct instead prohibit negative conduct on the basis of race or sex, warning employees that one act can result in termination based on its zero tolerance policy. Consequently, because Scripps' Social Media Policy does not require conduct to rise to the level of a <u>legal</u> hostile work environment in order to constitute a violation of the policy, Plaintiff's assertion that she was charged with creating a hostile work environment but exonerated of that claim will mislead and confuse the jury by implying that Plaintiff was determined not to have engaged in a policy violation when she in fact was found to have engaged in such policy violation. The fact that the outside investigator, a lawyer, out of an abundance of caution also referenced the legal definition of a hostile work environment and concluded that such a legal violation was not met because Plaintiff was not a supervisor and did not engage in pervasive conduct is irrelevant and would only serve to confuse the jury under Rule 403 and lead to additional witnesses being forced to explain and counter such misdirection offered by Plaintiff. Consequently, any reference by Plaintiff to having been accused and exonerated of creating a hostile work environment should be excluded under Rule 403.

## DEFENDANT'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE REFERENCES TO DEFENDANT'S EMPLOYEE HANDBOOK AS NOT INCLUDING DEFENDANT'S SOCIAL MEDIA POLICY

Defendant hereby moves *in limine* to exclude any evidence, testimony, or references thereto at trial related to Defendant's Employee Handbook as not including Defendant's Social Media Policy. The 2016 Social Media Policy violated by Plaintiff is a stand-alone policy applicable

to all Scripps employees and is available on the Scripps intranet. It is not relevant whether the Policy is included in Defendant's "Employee Handbook." Plaintiff had access to the Social Media Policy and signed off on being trained on this policy effective as of February 2016 by way of Defendant's intranet Compliance Corner. Moreover, the Code of Conduct also references and is incorporated in the Social Media Policy. The Social Media Policy is also covered in Scripps' Code of Conduct e-learning training which Plaintiff completed on October 17, 2017, and the policy was also sent to and received by her in an email by management in February 2018. Any suggestion at trial that the policy does not appear in Defendant's Employee Handbook will unnecessarily confuse the jury over an immaterial issue—namely the exact placement of the policy within company documents. No law requires a company to include all of its policies in a single "employee handbook" as opposed to its Intranet, its Code of Conduct, or as a standalone policy not part of a larger document, intended to highlight its importance. It is undisputed that the policy was in force at the time of Plaintiff's social media conduct, applied to Plaintiff, and she received the policy. Accordingly, any such references to the policy not being in the "handbook" should be excluded.

## DEFENDANT'S MOTION *IN LIMINE* NO. 6 TO EXCLUDE REFERENCES TO ALLEGEDLY DENIED PROMOTIONS THAT ARE NOT CLAIMS IN THE CASE

Defendant hereby moves *in limine* to exclude any evidence, testimony, or references thereto at trial which relate to promotions Plaintiff sought but was not awarded that are not claims in this lawsuit. As the Court made clear in its September 26, 2018 Order (Dkt. No. 215), the only claims to be tried are those asserted in the First Amended Complaint that survived summary judgment as well as the retaliation claim in the Second Amended Complaint arising out of conduct that took place in May and June 2018. Thus, the only Failure to Promote Claim being tried based

on the Court's September 26, 2018 Order is the Investigative Reporter/Consumer Reporter position in April, 2015. As a result, any references by Plaintiff to any other promotions allegedly sought by Plaintiff which she was not awarded or feels that she deserved are irrelevant to Plaintiff's claims. Additionally, references to or evidence of such denied promotions will mislead the jury into believing all of the positions which Plaintiff sought but was not awarded or believed she deserved remain at issue in this case. Any such testimony will prejudice the jury, confuse the issues, and needlessly prolong the trial with mini-trials due to the necessity of Defendant to bring on multiple additional witnesses to rebut testimony concerning claims not in the case. Consequently, all references to any promotion other than the Investigative Reporter promotion—the only promotion claim still at issue in in this case, should be excluded.

### DEFENDANT'S MOTION *IN LIMINE* NO. 7 TO EXCLUDE REFERENCES TO SCHEDULE CHANGES PLAINTIFF ALLEGES TO HAVE BEEN DISCRIMINATORY

Defendant moves *in limine* to exclude any evidence, testimony, or references thereto at trial which relate to various changes Plaintiff has sought in her work schedule and/or that she believes she deserved. At various times during her employment, Plaintiff sought to change her work schedule. Plaintiff alleged that Scripps' refusal to grant her schedule change requests was evidence of a hostile work environment. The Court, however, dismissed that claim. (Dkt. No. 115.) Plaintiff's requests for altered schedules are not relevant to the claims remaining for trial. Specifically, they have no relevance whatsoever to the remaining failure to promote and retaliation claims and would confuse the jury and suggest they must assess liability as to whether Plaintiff's schedule change was discriminatory or retaliatory. Schedule changes are not adverse actions. *Hughes v. Stottlemyre*, 454 F.3d 791, 797 (8th Cir. 2006) (affirming district court holding that schedule change is not an adverse employment action). Plaintiff does not have a claim in the

lawsuit any longer concerning her schedule.  What is more, if Plaintiff is permitted to testify about her requested schedule changes, such testimony will unnecessarily confuse the jury and prolong the trial as it will require mini-trials on Plaintiff's schedule as well as that of numerous other Scripps employees concerning their schedules and reasons for changes in schedules, reasons for denying changes in schedules, the relative performance of employees to justify schedule changes, etc. Consequently, all references to Plaintiff's requested schedule changes should be excluded as irrelevant and/or under Rule 403.

## DEFENDANT'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE REFERENCES TO NBC OPINION PIECE

Defendant hereby moves *in limine* to exclude any evidence, testimony, or references thereto at trial which relate to an NBC opinion piece posted on NBC.com entitled, "White Fragility: Why it's So Hard for White People to Talk about Racism."  Based on her questioning at deposition, it is anticipated Plaintiff may attempt to use this article to suggest that opinion articles on race are posted by news outlets without consequence.  Plaintiff, however, is not an opinion writer and Scripps' Social Media Policy specifically addresses race and gender-related posts that may be construed as discriminatory or contributing to a hostile work environment.  Moreover, what NBC.com chooses to post or allow to be posted as opposed to KSHB, a local television new station, is not relevant to Defendant's non-renewal decision, or whether Plaintiff violated Defendant's specific Social Media Policy.  KSHB is owned by Scripps and does not own NBC, but is affiliated with NBC.  Thus, Defendant has no control over NBC.  NBC does have an "opinion" section for its website, but KSHB does not.  Any reference by Plaintiff to this NBC posted article is irrelevant and will confuse the issues and falsely attribute NBC's website content to KSHB/Scripps, who has

no control over such content of its network affiliate. All references to this article should be excluded as irrelevant and/or under Rule 403.

## DEFENDANT'S MOTION *IN LIMINE* NO. 9 TO EXCLUDE REFERENCES TO THURMAN DOMESTIC VIOLENCE ARREST

Without disclosing the document to defense counsel in advance, Plaintiff at a recent deposition questioned a witness concerning a third party website's "scoop article" stating that Randy Thurman, the station's creative services director had been "busted" for battery at 1:45 AM on July 4, **2016** involving his wife. Mr. Thurman is not a reporter or an anchor and in his role as creative services director, he is not a public figure, nor does he have any on-air role. This issue predates the time period the Court allowed for additional discovery of May and June, **2018 by nearly two years**. Steve Watt, the General Manager who opted not to renew Plaintiff's employment contract in June, 2018 was not even employed at the station or with Scripps at the time of this alleged incident. Mr. Watt did not become the General Manager at KSHB until May, 2017 nearly a year after the allegation concerning Mr. Thurman and of course could not have been involved in decisions relating to his employment that may have been considered at the time. This allegation is not relevant.

The law is clear that Plaintiff may not rely on conduct that allegedly happened in 2016 that did not involve the decision makers for Plaintiff's non-renewal and did not involve the same positions. *Betz v. Chertoff*, 578 F.3d 929, 934 (8th Cir. 2009) ("To be similarly situated two employees ordinarily must deal with the same supervisor or the decision-maker must be the same in both instances."). Moreover, there is no allegation that Mr. Thurman admitted guilt or was found guilty concerning these allegations. This is a clear effort to smear the Station and Mr. Thurman and an attempt to confuse the issues before the jury. Any reference to this alleged

16

incident would result in undue prejudice to Defendant. Even if this evidence had any relevance (which it does not), it must be excluded under Rule 403. If this evidence is allowed over objection, Defendant will be forced to call Mr. Thurman, his wife, and potentially others to testify to the facts in an effort to counter the irrelevant smear campaign by the Plaintiff. This will further complicate and lengthen the trial. Accordingly, Plaintiff must be precluded from making any reference to Randy Thurman's alleged arrest or the issues surrounding same.

### DEFENDANT'S MOTION *IN LIMINE* NO. 10 TO EXCLUDE REFERENCES TO PLAINTIFF BEING "FIRED" OR "TERMINATED"

Defendant hereby moves *in limine* to exclude any evidence, testimony, or references thereto at trial to Plaintiff having been fired by Defendant. Plaintiff was not fired, rather her contract was not renewed and she was paid in full for the approximately two months remaining on her contract at the time of her non-renewal decision. Moreover, Plaintiff was paid in full during her suspension from work during the outside investigation and then paid in full through September 1, the end of her contract. When Defendant opted to not renew her contract, it also waived her non-compete obligations. Exercising its non-renewal option as Defendant did in compliance with Plaintiff's Employment Agreement is different from firing Plaintiff and thus, any reference to the non-renewal decision as a firing would be meant to inflame and confuse the jury. Plaintiff has actually corrected her previous incorrect statements on social media that she was "fired" and replaced it with the correct terminology that her contract was not renewed. As such, Defendant respectfully requests a ruling that Plaintiff should not be permitted to refer to Defendant's non-renewal decision as a firing or termination or any similar terminology.

## DEFENDANT'S MOTION *IN LIMINE* NO. 11 TO EXCLUDE REFERENCES TO "LEADERSHIP CHAMPION" POSITION

Defendant hereby moves *in limine* to exclude any testimony regarding the Leadership Champion position for which Plaintiff claims she did not receive because of her race. Any claim relating to the Leadership Champion position must be precluded at trial because when specifically asked about all of her claims for damages, Plaintiff's Interrogatory Responses failed to list *any* damages whatsoever associated with any such denial of the Leadership Champion designation. *See* Exhibit "A," attached hereto. Without a claim for damages, the Court lacks jurisdiction to entertain such a claim. *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 803 (8th Cir. 2006) (indicating a plaintiff must be injured in some way to have standing to pursue its claims); *see also M.W. ex rel. Williams v. Avilla R-XIII School Dist.*, 2011 WL 3354933 at *3 (W.D. Mo. Aug. 3, 2011) (holding that plaintiffs could not pursue claims where they could not allege damages resulting from those claims). Indeed, Leadership Champion is not a position to which an employee can be promoted at all but a mere designation, which did not come with increased salary or employment benefits, and the deprivation of which cannot constitute an adverse employment action. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1243-45 (11th Cir. 2001) (holding that removal of employee's designation as "officer in charge" was not an actionable adverse employment action); *King v. City and County of San Francisco*, 2012 WL 3877673 at *5 (N.D. Cal. Sept. 6, 2012) (ruling that employer's refusal to designate employee as a "lead" was not an adverse employment action because the designation was a mere "transitory title" that did not result in increased pay or employment benefits). Plaintiff at her deposition also did not even reference the "Leadership Champion" when questioned concerning the claims she believed she was asserting. Consequently, all testimony regarding the Leadership Champion role should be excluded.

## DEFENDANT'S MOTION *IN LIMINE* NO. 12 TO EXCLUDE
## RUBY HAMAD AS A WITNESS

Defendant hereby moves *in limine* to exclude any testimony from Ruby Hamad. First, Ms. Hamad has no personal knowledge of any fact relevant to Plaintiff's claims. Thus, any testimony she may provide with regard to the facts concerning the non-renewal decision or other aspects of Plaintiff's claims would be either inadmissible speculation or hearsay. Any testimony Ms. Hamad could offer as a fact witness, such as testimony concerning her reasons for writing her article, for example, is simply irrelevant. There is no indication that Ms. Hamad's motivation for writing her article played any role in Scripps' decision not to renew Plaintiff's contract. Indeed, Plaintiff had never spoken with, or even heard of, Ms. Hamad prior to posting her article. *See* Plaintiff's Deposition, Volume III at 704:23-705:3. Further, Ms. Hamad's testimony concerning the purported statements made out of Court involving others referenced in the article would constitute hearsay.

Ms. Hamad's lack of personal knowledge of the relevant facts, combined with Plaintiff's subsequent solicitation of Ms. Hamad's support and Ms. Hamad's resulting efforts to bring unfair publicity to the issue and Scripps in particular, shows that, if permitted to testify, Ms. Hamad's only role would be to serve as a cheerleader for Plaintiff while attempting to confuse and unfairly prejudice the jury against Scripps. Plaintiff's social media activity reflects a campaign involving Ms. Hamad and others to bring publicity to Ms. Hamad's article by championing Plaintiff's "cause," which smacks of tainting the jury. Unfair prejudice and jury confusion are particularly likely here because Ms. Hamad, as author of the article posted by Plaintiff before her contract was not renewed, could take on a celebrity status in the eyes of the jury. *See Lidle v. Cirrus Design Corp.*, 2011 WL 1642339 (S.D.N.Y. April 25, 2011) (excluding witnesses because celebrity status posed likelihood of unfair prejudice). As such, Ms. Hamad's testimony should be excluded.

Second, Ms. Hamad has never been identified as an expert and therefore cannot testify as to her opinion concerning the journalistic propriety of her article, discrimination, implicit bias, or any other topic. *Bartell v. Govoreau*, 2005 WL 5989792 (W.D. Mo. Sept. 23, 2005) (excluding proffered expert witness because party failed to timely identify the expert). The kind of testimony Ms. Hamad could offer, which would be unfettered from facts or expert opinion, would serve only to confuse the issues and mislead the jury. As such, Ms. Hamad should be excluded as a witness in this case.

## DEFENDANT'S MOTION *IN LIMINE* NO. 13 TO EXCLUDE THE "OLD WHITE GUY" ALLEGATION BY SPORTS ANCHOR, DEE JACKSON

Defendant hereby moves *in limine* to exclude any testimony relating to an alleged statement by Carrie Hofmann (which Hofmann denies) regarding making the Sports Director hiring decision in an effort to avoid PR concerns from passing over an "old white guy." In the Eighth Circuit, "[d]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Aulick v. Skybridge Americas, Inc.*, 860 F.3d 613, 620 (8th Cir. 2017). For a remark to be direct evidence of discrimination, it "must show a specific link between a discriminatory bias and the adverse employment action." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1045-46 (8th Cir. 2011). Hofmann's alleged statement is not, as Plaintiff claims, direct evidence of discrimination, and should be excluded as such for four reasons. First, Hofmann's statement was not about Plaintiff, which precludes it from being direct evidence of discrimination with regard to Plaintiff. Second, Hofmann's alleged statement, even if made, was not about the decisionmaking process Plaintiff is challenging in her lawsuit, which precludes the statement from being direct evidence. Third, Hofmann's alleged statement was not about race at all, which prevents it from being direct

evidence of race discrimination. Finally, Hofmann's purported statement to Jackson if made could only be a stray remark, which is not direct evidence.

### 1.    The Statement Was Not About Plaintiff

Generally, a decisionmaker's statements are not direct evidence of discrimination unless they are actually about the plaintiff. *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017-18 (8th Cir. 1999) (holding that no direct evidence of discrimination existed because none of the decisionmaker's sexist and sexual statements related to the plaintiff). As the Eighth Circuit explained in *Torgerson*, a decisionmaker's statements must show a *specific link* between a discriminatory bias and a specific adverse employment action. 643 F.3d at 1045-46. Clearly, that cannot happen if the decisionmaker's statements are not about the plaintiff. *Id.* at 1046. It is undisputed that the alleged statement was not about Plaintiff in any way; it therefore cannot be direct evidence of discrimination against Plaintiff.

### 2.    The Statement Was Not About the Decisional Process Related to Plaintiff

Allegedly prejudiced comments made by decision makers that are unrelated to the decisional process challenged by a plaintiff are not direct evidence of discrimination. *Mohr v. Dustrol, Inc.*, 306 F.3d 636, 640-41 (8th Cir. 2002), abrogated on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). In *Clearwater v. Indep't School Dist. No. 166*, 231 F.3d 1122, 1127 (8th Cir. 2000), the court held that although a decisionmaker made offensive comments about Native Americans, the comments were "not sufficiently related to the adverse employment action in question to constitute direct evidence of a discriminatory motive." Here, Hofmann's alleged statement had nothing at all to do with any decisional process concerning Plaintiff's employment. Hofmann's purported statement concerned only the decision to hire Frank Boal as the Sports Director. Because a connection between the alleged statement to Jackson and the decisional

process concerning Plaintiff is completely absent, the statement, even if true, which Hofmann denies, cannot be direct evidence, and should be excluded as such.

### 3. The Statement Was Not About Race

A statement by a decisionmaker does not constitute direct evidence of discrimination unless it concerns the basis on which the plaintiff alleges she was discriminated. *McGinnis v. Soo Line R. Co.*, 2014 WL 813858, at *3 (D. Minn. March 3, 2014) (holding that remarks that were only "tangentially-related to age" did not constitute direct evidence of discrimination. In *Bauer v. Metz Baking Co.*, 59 F. Supp. 2d 896, 904-05 (N.D. Iowa 1999), the court found that a decisionmaker's comment that the plaintiff might like to retire so that she could work in her garden or travel was not sufficiently related to age as to constitute direct evidence of discrimination). Similarly, in *Smith v. Don's Paint and Body Shop*, 2005 WL1124738 at * 5 (D. Minn. May 11, 2005), the court found that a decisionmaker's statements that the plaintiff was "losing it" were insufficiently related to age to be direct evidence of discrimination. Here, the alleged statement to Jackson was, at best, tangentially related to race. Though according to Jackson, Hofmann purportedly mentioned that Boal was the "old white guy," the context of the comment showed that she was communicating her opinion of what the public perception would have been if Boal, a local legendary sportscaster, was not given the Sports Director job. Thus, the alleged statement is not direct evidence of race discrimination and to the extent Plaintiff claims they are, should be excluded.

### 4. The Statement Was a Stray Remark

The Eighth Circuit and the Eastern District of Missouri have recognized that "stray remarks in the workplace" are not direct evidence of discrimination. *Aulick*, 860 F.3d at 620; *Burrow v. Boeing Co.*, 2011 WL 1594937 at *7 (E.D. Mo. April 27, 2011). In *Lovell v. Brinker Int'l, Inc.*,

1997 WL 570457 at *5 (W.D. Mo. June 27, 1997), the court found a decisionmaker's racially offensive comments did not constitute direct evidence of discrimination because they were made in the context of an after-hours recreational setting and were unrelated to any decision concerning the plaintiff). In *Smith*, 2005 WL1124738 at * 5, the court found that a decisionmaker's statements about plaintiff's age with no causal connection to the adverse employment decision were stray remarks and not direct evidence of discrimination. Like the comments above, there is nothing linking Hofmann's alleged statement which allegedly concerned Frank Boal to any decision concerning Plaintiff or the decisional process related to Plaintiff's contract. Consequently, the statement -- if made -- could only constitute a stray remark and not direct evidence of discrimination as Plaintiff claims.

For these reasons, Defendant respectfully requests that any reference to the alleged statement referring to Mr. Boal as the "old white guy," be excluded from trial.

## DEFENDANT'S MOTION *IN LIMINE* NO. 14
## TO EXCLUDE REFERENCES TO EMOTIONAL DISTRESS

Defendant hereby moves *in limine* to exclude any evidence, testimony, or references thereto at trial to Plaintiff's emotional distress. Plaintiff cannot rightfully maintain an argument that she was subject to emotional distress that went undiagnosed by any sort of medical provider. Furthermore, her own social media posts demonstrate that she suffered no emotional distress. In fact, based on her Facebook posts, Ms. Benson suggested that life was better not worse after leaving KSHB and so to suggest otherwise, in the absence of medical testimony to the contrary, would necessarily require Plaintiff to testify to a state of mind that is in direct conflict with the image she projects to the world day in and out on Facebook. *See Curry v. U.S.*, 2018 WL 347661 at *2 (E.D. Cal. Jan. 9, 2018) (recognizing that garden variety emotional distress requires showing that the plaintiff suffered distress and pain and suffering, though not at a level sufficient to require

medical treatment). Plaintiff's own social media postings reflect no distress due to her contract non-renewal, but joy. As a result, she should be precluded from testifying to alleged emotional distress. *See*, for example, Exhibit B, attached hereto.

Moreover, emotional distress evidence should be excluded because any evidence, arguments, or references to any medical conditions or emotional distress to the extent it exists, is disconnected to any alleged discrimination Plaintiff suffered in the workplace. Plaintiff's Second Amended Complaint alleges she has suffered "pain and suffering, mental anguish, anxiety and emotional distress." Dkt. No. 180 ¶ 24. In response to Defendant's discovery requests seeking Plaintiff's medical records for evidence supporting these alleged non-monetary damages, Plaintiff refused access to her records and medical providers. Rather, Plaintiff stated, through her counsel, that "Plaintiff is not claiming diagnosable medical or emotional injury. The law refers to her claim as 'garden variety' emotional distress. No medical testimony, no records are required to recover on such a claim." Exhibit "C", email from Plaintiff's counsel to the Court, December 21, 2017, attached hereto. Plaintiff's Response attempts to improperly side-step Defendant's right to discovery to identify other stressors by claiming that she is not relying on medical testimony or records for her case. But, Defendant should have been permitted to explore the issues fully because they explain any stress she experienced as relating to other stressful situations, such as her filing for divorce and she should be precluded now from asserting such pain and suffering, mental anguish, anxiety, and emotional distress," allegedly caused by KSHB.

1. **Evidence or testimony reflecting or relying on a medical diagnosis or opinion should be excluded.**

Plaintiff refused to allow Defendant to access her complete medical records or depose her doctors. This prevented Defendant from discovery relating to any medical diagnosis which Plaintiff may attempt to raise at trial, including purported anxiety, depression, insomnia, stress,

pregnancy complications, etc., including Plaintiff's symptoms, causation, contributing factors, or prescribed treatment. Plaintiff should not be rewarded by being allowed to introduce evidence reflecting or relying on purported diagnoses when her actions prohibited Defendant from verifying or disproving them during discovery. Such evidence would imply causation to a jury, and would be highly prejudicial to Defendant's case, despite the lack of any admissible evidence to support either the diagnosis or causation.

Plaintiff has further failed to disclose any expert witness qualified to confirm any diagnosis or proffer any opinion on causation. Any attempt by Plaintiff to lay a foundation as to a medical diagnosis at this point would mandate reliance on as-yet-undisclosed expert evidence or testimony, which is also the subject of another motion to exclude. Therefore, there is no basis for introducing any evidence which would suggest a diagnosis of *any* injury outside of garden variety mental distress. *Hodak v. City of St. Peters*, No. 4:04CV01099ERW, 2006 WL 521489, at *3 (E.D. Mo. Mar. 2, 2006) (granting motion *in limine* to exclude, as irrelevant, medical records and other evidence of mental illness when there was no expert to tie the mental illness to the incident complained of).

Because it would lack foundation laid by any medical professional, any evidence – for example, Plaintiff's request for leave under FMLA (Dkt. No. 92-42) – that relies on or reflects a medical diagnosis or opinion would be irrelevant, confusing, and prejudicial, and should therefore be excluded from trial.

2.    <u>**Lay evidence speculating a medical diagnosis should be excluded.**</u>

Furthermore, any speculation as to a medical diagnosis should be excluded. Such evidence or testimony is irrelevant to Plaintiff's claims. *State ex rel. Dean v. Cunningham*, 182 S.W. 3d 561, 568 (Missouri 2006) (en banc) (noting that "evidence of [Plaintiff's] medically or psychologically diagnosable mental or physical condition is irrelevant to the question of whether

she suffered 'garden variety' emotional distress" related to discrimination); *see also Williams v. Trans States Airlines, Inc.*, 281 S.W. 3d 854, 876-77 (Mo. Ct. App. 2009) (excluding treatment records and other evidence related to Plaintiff's emotional distress where Plaintiff only alleged garden variety distress); *D.P. ex rel. Pugh v. Bowling Green R-1 School Dist.*, No. 2:11cv00054, 2012 WL 918184 (E.D. Mo. March 19, 2012) (determining that plaintiff did not have to produce medical records to prove "garden variety" mental distress damages while concurrently holding that plaintiff could not present medical evidence in support of garden variety mental distress claim).

Even aside from this evidence's lack of probative value, any attempt to introduce a medical explanation for Plaintiff's emotional state would risk causing substantial juror confusion. Fed. R. Evid. 403. The entire reason garden variety distress damages are distinct from other forms of medical claims is because they are "generally in the common experience of jurors and do not depend on any expert evidence." *Cunningham*, 182 S.W. 3d at 568. To introduce into evidence records or testimony that point to specific medical conditions would constitute substitution for the jury's common experience and suggest diagnoses which have not been established by Plaintiff. Such confusion would be exacerbated in instances where lay witnesses give testimony that speaks to mental or physical conditions beyond "the kind of distress or humiliation that an ordinary person would feel in such circumstances." *Id*. As such, evidence related to Plaintiff's emotional distress must be limited to the usual stress that may result from Defendant's alleged conduct, such as anger, sadness, or humiliation. *See, e.g.*, *Flowers v. Owens*, 274 F.R.D. 218, 220 (N.D. Ill. 2011).

For the same reasons, as well as its nature as improper hearsay, Plaintiff cannot testify or introduce evidence of a medical diagnosis or any information relayed to her by a medical professional. *See Jackson v. Asplundh Construction Corp.*, 2016 WL 5941937 at *4 (E.D. Mo.

Oct. 13, 2016) (granting motion *in limine* preventing plaintiff from testifying about any medical diagnosis or medical information relayed to her).

3.   **Plaintiff should not be permitted to argue or refer to undiagnosed medical conditions as being "caused by" Defendant's alleged conduct.**

Finally, any introduction of evidence seeking to ascribe an undiagnosed medical condition to Defendant's alleged conduct should be excluded from trial as irrelevant, speculative, and prejudicial, including but not limited to:

- Carl Cooper's attempt to diagnose Plaintiff as suffering mental and emotional trauma, as well as physical ailments, due to Defendant's alleged conduct (Dkt. No. 101-01, ¶¶ 4, 5, 7, 11, 12);

- Plaintiff's testimony that she was prescribed medication for anxiety and/or depression caused by Defendant's alleged conduct (Dkt. No. 101-73, Plaintiff's Depo. Tr. 206-208, 279); and

- Any statement attempting to link purported early labor or pregnancy complications Plaintiff may have experienced to Defendant's alleged conduct[1] (*see* Dkt. No. 101-23, Depo. Ex. 37).

The only person who could make these causal connections at trial is an expert, and Plaintiff has never disclosed any medical expert or professional in this case. Causation opinions are not appropriate subjects of testimony for lay witnesses. *See* Fed. R. Evid. 701; *see also Tanner v. City of Sullivan*, 2013 WL 121476 at *3-4 (E.D. Mo. Jan. 9, 2013). Plaintiff has no evidence to tie any stress she has experienced to the actual limited claims in this case, as opposed to her now dismissed hostile environment claim, the sex, age, and FMLA claims she attempted unsuccessfully to pursue, the claims involving conduct from 2016, 2017, and 2018 that are out of the case and the many other alleged grievances she has against her employer. As stated, Plaintiff's own social media evidence reflects no emotional distress resulting from the non-renewal of her contract but instead

---

[1] Plaintiff has represented to the Court and Defendant that she will not testify or introduce evidence regarding her pregnancy complications, and therefore any references to such events would be irrelevant and unduly prejudicial to Defendant and contrary to her previous stipulation. (*See* Dkt. No. 81.)

reflects the opposite emotion of happiness/relief and she thus cannot tie any stress from the non-renewal to Defendant.

As only lay witnesses have been disclosed and can be presented at trial, any evidence or testimony as to causation of Plaintiff's purported medical conditions should be excluded, as well as evidence or testimony attempting to diagnose these unverified conditions.

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's Motion and exclude at trial any evidence, arguments, or references to: (1) any medical diagnoses of Plaintiff; (2) purported or speculative diagnoses of Plaintiff; and (3) theories of causation of Plaintiff's medical diagnoses. Defendant further requests the Court exclude any evidence, testimony, or references to any condition extending beyond that which would normally be considered "garden variety emotional distress," such that Plaintiff should not be permitted to reference conditions including general anxiety, sleeplessness, loss of self-esteem, depression, and other behavioral or physical ailments, or any other unsubstantiated or irrelevant illness or condition." *See Jackson v. Chubb Corp.*, 193 F.R.D. 216, 226 n.8 (D.N.J. 2000) (explaining view that garden variety emotional distress does not require medical records, but a specific diagnosis beyond garden variety distress would); *Eggering v. MHP, Inc.*, 2011 WL 6029956, at *2 n.1 (E.D. Mo. Dec. 5, 2011) (distinguishing the "ordinary and commonplace emotional distress" of garden variety claims from complex distress resulting in a specific diagnosis). As such, Defendant respectfully asks the Court to exclude testimony regarding Plaintiff's purported emotional distress, particularly where such testimony directly contradicts Plaintiff's own statements regarding her post-employment state of mind.

## DEFENDANT'S MOTION *IN LIMINE* NO. 15 TO EXCLUDE EVIDENCE, DOCUMENTS, AND WITNESSES NOT TIMELY DISCLOSED

Defendant hereby moves *in limine* to exclude any evidence, documents, and witnesses not timely disclosed by Plaintiff. The discovery phase of this litigation initially closed on December 22, 2017 and the new discovery deadlines associated with Plaintiff's new retaliation claim closes on December 21, 2018. Any evidence, documents, and witnesses not timely disclosed, cannot constitute admissible evidence of Plaintiff's racial discrimination or retaliation claims, and should be excluded.

The Federal Rules of Civil Procedure prohibit Plaintiff from introducing at trial any witness, legal theory, or evidence that was not disclosed during discovery in this case. Under Fed. R. Civ. P. 26, parties are required to initially disclose contact information for "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses," as well as a copy or description of all materials and things that the disclosing party has and may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A). Under Rule 26 and the Court's Scheduling Order, parties are also required to promptly disclose and file the name of each witness who may appear at trial and "an identification of each document or other exhibit." Fed. R. Civ. P. 26(a)(3). Such disclosures are to be timely supplemented. Fed. R. Civ. P. 26(e).

In her amended Rule 26 disclosures made in November 2018, Plaintiff attempted to add individuals likely to have discoverable information relevant to the claims included in her ***First Amended Complaint*** that should have been submitted prior to the close of discovery in 2017. Her disclosures are so broad as to include **any current or former employee of Defendant, adding up to thousands of people**. Even based on the named individuals alone, the trial would be extended for weeks for such individuals to testify, for Defendant to cross examine them and submit rebuttal

evidence. As far as witnesses or documents that are relevant to the claims in her First Amended Complaint but that were only disclosed in November 2018, Plaintiff failed to timely supplement her disclosures, and she should not be permitted to rely on this evidence. Additionally, though discovery closed in December 2017, Plaintiff submitted supplemental Rule 26 disclosures in January 2018 that were not disclosed in a timely fashion or even prior to the close of discovery for her initial case in December, 2017. Her current disclosures mimic the previous disclosures made after the close of discovery and double-down to add even more individuals.

There is nothing indicating Plaintiff's failure to supplement was justified or harmless. For example, Plaintiff adds in her supplemental Rule 26 disclosures: "Any current and prior employees not already referenced not (sic) listed." This listing—while objectionable in its own right—could easily have been included in her Rule 26 disclosures made March 10, 2017.

"The power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential to the judge's control over the case." *Certain Underwriters at Lloyd's v. SSDD, LLC*, No. 4:13-CV-193 CAS, 2014 WL 3384703, at *3 (E.D. Mo. July 10, 2014) (quoting *Sellers v. Mineta*, 350 F.3d 706, 711 (8th Cir. 2003)). The Eighth Circuit holds that delays in disclosing or supplementing discovery are not "substantially justified" when they reasonably could have been avoided. *E.g.*, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759-60 (8th Cir. 2006) (identifying witness after deadline is prohibited when the party had "ample opportunity to develop" the issue and should have sought to supplement). The Eighth Circuit further recognizes that failures to disclose, which unduly prejudice the opposing party, are "harmful." *E.g.*, *Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir. 2002) (affirming district court's grant of motion in limine excluding undisclosed discovery, finding that "use of the undisclosed witnesses and exhibits would have unfairly prejudiced [the opposing party]

30

at trial, even if the witnesses and exhibits had been identified or referenced somewhere in the course of discovery.").

Here, if Plaintiff is permitted to introduce any untimely or undisclosed witness testimony or exhibits, Defendant would be severely prejudiced and the order and efficiency of this case's trial would be disrupted. *Sappington v. Skyjack Inc.*, No. 04-5076-CV-SW-FJG, 2008 WL 895222, at *7 (W.D. Mo. Mar. 27, 2008) (granting motion in limine excluding "[a]ny information, testimony, evidence, or documents not produced in discovery."). More specifically, Plaintiff should be barred from introducing any testimony or exhibits related to:

a.    additions made in her Rule 26 Supplemental Disclosures dated January 24, 2018 and November 14, 2018 that include the same individuals who should have been disclosed prior to the close of discovery in 2017;

b.    any as-yet-undisclosed witness; and

c.    any undisclosed evidence on Plaintiff's exhibit list.

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's Motion and exclude, at trial, any testimony, legal theories, or exhibits of Plaintiff that were not disclosed to Defendant during discovery in this case.

## DEFENDANT'S MOTION *IN LIMINE* NO. 16 TO EXCLUDE REFERENCES TO THE SIZE, RESOURCES, OR LOCATIONS OF DEFENDANT'S WITNESSES, REPRESENTATIVES, OR ITS COUNSEL

Initially raised in its Motion in Limine of April 10, 2018, Defendant hereby moves again *in limine,* and respectfully requests a ruling to exclude any evidence, arguments, or references to any evidence related to the composition of Defendant's trial team, including the size or resources of its legal counsel, Dentons US LLP and Baker & Hostetler LLP, or the state or county of residence of Defendant's witnesses, corporate representative(s), or counsel.

Evidence relating to the size, composition, or resources of Defendant's legal counsel, Dentons US LLP and Baker & Hostetler LLP, or the out-of-state residence of Defendant's corporate representative or counsel would not be relevant to any issues in this case. Fed. R. Evid. 401. Such references or evidence have no tendency to make any fact more or less probable, or to clarify any remaining issues to be tried in this case. *Id.* As such, any references or evidence are also inadmissible. Fed. R. Evid. 402.

Further, admission of such evidence would be unduly prejudicial to Defendant. Fed. R. Evid. 403. Such evidence could mislead the jurors into considering matters outside of the relevant facts and issues in this action, or into developing biases against Defendant. Moreover, admission of such evidence would cause undue delay and time waste during trial. Courts thus regularly exclude such references and evidence as irrelevant and/or prejudicial. *See, e.g.*, *Winter v. Novartis Pharm. Corp.*, No. 06-4049-CV-C-MJW, 2012 WL 827245, at *4 (W.D. Mo. Mar. 8, 2012) (precluding plaintiff from referencing defendant's corporate structure or that it was "a Swiss company and that 'they are not one of us'"); *Sappington v. Skyjack Inc.*, No. 04-5076-CV-SW-FJG, 2008 WL 895222, at *2–3 (W.D. Mo. Mar. 27, 2008) (excluding evidence, testimony, and argument relating to fact that defendant was Canadian company and to "[t]he wealth, poverty, or financial position of any party"); *I-Sys., Inc. v. Softwares, Inc.*, No. CIV.021951 (JRT/FLN), 2005 WL 1430323, at *7–8 (D. Minn. Mar. 7, 2005) ("excluding evidence and testimony relating to the corporate history of [the plaintiff] and to its recent incorporation in Canada" because evidence "at best, only tangentially relevant and, as such, was more prejudicial and potentially confusing to the jury than probative").

Accordingly, Plaintiff should not be permitted to introduce any evidence, testimony, or arguments related to the following irrelevant topics:

- The state or county of residence of Defendant's witnesses, corporate representative(s), or counsel;

- The fact that Dentons US LLP is the largest law firm in the world or one of the largest law firms in the United States;

- Any reference to the fact that some of Defendant's attorneys are located outside the state of Missouri; in Ohio; in Texas; or, specifically, in Cincinnati, Ohio;

- The composition of Defendant's trial team or their respective dates of entry of appearance as counsel;

- Any other references to the size, financial condition, or resources of Dentons US LLP or Baker & Hostetler LLP; and

- Any references to the resources of Plaintiff or her counsel relative to the resources of Defendant or its counsel, including the respective number of attorneys at counsel table and/or in the courtroom at trial.

None of the foregoing information is relevant to any issue in this case, and there is no legitimate basis for introducing or referring to such information in any way at trial. *See Hale Cnty. A&M Transp., LLC v. City of Kansas City, Mo.*, No. 4:12-CV-00265-DGK, 2014 WL 545779, at *5 (W.D. Mo. Feb. 11, 2014) (excluding "[e]vidence concerning the size of law firms representing Plaintiff and Defendant"; "[s]tatements referring to the comparative net worth, wealth, or power of Plaintiff and Defendant"; and "[d]erogatory references to [a party] because of its corporate or out-of-state status"). Accordingly, the Court should enter an order precluding Plaintiff from mentioning any information related to the size, composition, corporate structure, resources, and locations of any non-party, Dentons US LLP, or Baker & Hostetler LLP. While the Court may assume that Plaintiff's counsel would not attempt to make derogatory reference to location of counsel/Defendant or alleged "outsiders," Plaintiff's counsel has continued to do so in the discovery of this action involving Plaintiff's new case of retaliation in 2018. The Court should direct that the geographic origin of Defendant or its counsel has no relevance to this case and preclude such references in that it has the tendency to prejudice the jury against "outsiders."

33

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's Motion and exclude, at trial, any evidence, arguments, or references relating to the size, composition, or resources of its legal counsel, Dentons US LLP and Baker & Hostetler LLP, or the state or county of residence of Defendant's witnesses, corporate representative(s), or counsel.

## DEFENDANT'S MOTION *IN LIMINE* NO. 17 TO EXCLUDE EVIDENCE RELATED TO DISCRIMINATION NOT ALLEGED BY PLAINTIFF

Defendant moves to exclude any evidence, testimony, or references thereto at trial to the introduction of any evidence, arguments, or reference to evidence that purportedly demonstrates discrimination which is allegedly based on national origin, disability, color, religion, sex, age, marital or parental status, or pregnancy or other alleged instances of race discrimination not involving the alleged discriminatory failure to promote Plaintiff to the May 2015 investigative reporter position would be irrelevant as it fails to make Plaintiff's claims of race discrimination and retaliation[2] more or less probable, and is not probative of discrimination based on race. Fed. R. Evid. 402. The same is true for any instances of alleged retaliation other than the May 2015 and 2018 retaliation claims that remain in the lawsuit.

Any probative value of evidence that Plaintiff suffered other discrimination or retaliation is outweighed by the danger such evidence poses in creating prejudice, confusing the issues, or misleading the jury. Claims related to any of these protected characteristics have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one," creating an unfair prejudice against Defendant. *United States v. Dennis*, 625 F.2d 782, 796-797 (8th Cir. 1980).

---

[2] To prove retaliation, Plaintiff does not need to prove that she was actually discriminated against. *See, e.g., Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707 (8th Cir. 2000) ("A finding of unlawful retaliation, however, is not conditioned on the merits of the underlying discrimination complaint."). Therefore, only evidence that has a tendency to show Plaintiff was retaliated against because she engaged in protected activity is relevant and admissible for her retaliation claim.

Claims of discrimination and retaliation are pernicious and inflammatory, and any evidence presented is likely to invoke an emotional bias from the jury against Defendant and its employees. Evidence or testimony relating to discrimination or retaliation not being claimed would unavoidably be conflated by the jury with Plaintiff's racial discrimination and retaliation claims. Moreover, such evidence would confuse the jury because they are not being asked to decide whether Defendant allegedly discriminated on a basis other than race or retaliation for the existing claims and the jury could not compartmentalize "other evidence of race/retaliation" from that for which they are permitted to consider as part of her claims. This Court should prevent any irrelevant evidence and/or any evidence that would result in undue prejudice, confusion, or else be misleading by excluding any purported evidence that Defendant discriminated against Plaintiff or retaliated in connection with any instances other than the remaining claims in the lawsuit.

## DEFENDANT'S MOTION *IN LIMINE* NO. 18 TO EXCLUDE REFERENCES TO ADAM SYMSON'S JUNE 28, 2018 EMAIL ENTITLED, "Here's what's on my mind"

Defendant hereby moves *in limine* to exclude any evidence, testimony, or references thereto at trial which relate to Scripps' CEO Adam Symson's June 28, 2018 email entitled, "Here's what's on my mind." The Court should exclude this and any other alleged evidence Plaintiff offers from the time after the non-renewal of Plaintiff's contract for the reasons set forth in Defendant's Motion in Limine number 2, but Defendant separately moves *in limine* concerning Plaintiff's reference to Defendant's CEO to highlight additional reasons for the exclusion of this evidence.

Defendant anticipates that Plaintiff will seek to introduce at trial, a June 28, 2018 email from Scripps' CEO,[3] Adam Symson to Scripps' employees, entitled, "Here's what's on my mind."

---

[3] *See Sellers v. Deere & Co.*, No. C12-2050, 2014 WL 59928, at *1 (N.D. Iowa Jan. 7, 2014), *on reconsideration in part*, No. C12-2050, 2014 WL 468242 (N.D. Iowa Feb. 5, 2014); *Serrano v. Cintas Corp.*, 699 F.3d 884, 900 (6th Cir.

Defendant attaches for the Court's reference the email in question that Plaintiff has used in depositions in this case. *See* Exhibit D, attached hereto. In the email, Mr. Symson references, among other things, the percentages of women and minority representation in newsrooms across the country and acknowledges that as a company, Scripps, is on par with these numbers, but that there is continued work to be done in this regard. Mr. Symson goes on to describe some of the ways in which he is both professionally and personally committed to reflecting both his own, and Scripps' commitment to diversity. While Mr. Symson's email is commendable and his personal and professional efforts should be lauded, Plaintiff cynically seeks to use Mr. Symson's email to suggest that it is somehow an "admission of liability" and/or a response to her lawsuit and somehow evidences that Scripps discriminated against her in the past, and only seeks newsroom diversity now, as some sort of penance for its past indiscretions toward her. Mr. Symson's email is no such admission and will be offered only for the purposes of prejudicing the jury with "evidence" that post-dates Plaintiff's employment, is not relevant to the litigation, and is intended only to anger, inflame and confuse the jury. As an initial matter, the evidence must be excluded because the 2018 discovery period has been reopened only to address Plaintiff's 2018 retaliation claim.

Moreover, evidence of action taken by Scripps after Plaintiff's employment ended, namely, Mr. Symson's decision to address Scripps' employees on the important issue of diversity within the industry and the company, is not relevant and Plaintiff's intent to refer to it is plainly improper. Furthermore, by its plain language, Mr. Symson's June 28, 2018 email does not constitute evidence of any admission that the decision not to renew Plaintiff's contract was discriminatory or

---

2012) (discussing factor under the Apex doctrine requiring that executive have unique and special knowledge of the facts at issue).

retaliatory. To the contrary, Mr. Symson's email suggests nothing more than that Scripps' goal is to better promote diversity in its newsrooms than the rest of the media industry as a whole. Accordingly, Mr. Symson's email cannot in any way be construed as direct evidence of discrimination or retaliation because it does not clearly and unmistakably demonstrate discrimination or retaliation. *See Hutton v. Maynard*, 812 F.3d 679, 683-684 (8th Cir. 2016) (holding direct evidence requires statements of discriminatory intent without the need for inferences); *Moody v. Vozel*, 771 F.3d 1093, 1096-1097 (8th Cir. 2014) (finding that statements are not direct evidence of discrimination when they are not made by a decision maker and no link has been shown between the statement and the adverse employment action).

Further, Mr. Symson's email is not relevant because it was made by someone who is not alleged to have played any role in the decision not to renew Plaintiff's Employment Agreement. Because the email was penned by someone who had no part in the decision not to renew Plaintiff's contract, and does not refer to or relate to Plaintiff in any way, it is not relevant to Plaintiff's claims. The email cannot constitute evidence of retaliation or discrimination. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (quoting *Browning v. President Riverboat Casino-Missouri, Inc.,* 139 F.3d 631, 635 (8th Cir. 1998) (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); *see also Veliz v. City of Minneapolis*, 2008 WL4544433, at *1, (D. Minn. Oct. 9, 2008) (excluding non-decision maker's statements under Rules of Evidence 401 and 403 when decision maker made no such alleged retaliatory statements). Moreover, the email was sent twenty-one days *after* the non-renewal decision and as such, could not have played any role in the decision not to renew her Employment Agreement—a decision Plaintiff claims was retaliatory. Logically, matters occurring *after* the Plaintiff's separation from Scripps cannot be relevant to her claim, nor can any such matters support her burden of proving retaliation because

such burden can only be supported by actions that occurred at the time of (not after) the allegedly retaliatory act occurred. *Green v. City of St. Louis, Mo.*, 507 F.3d 662, 669 (8th Cir. 2007) (holding trial court did not abuse discretion in holding post-termination statements were not relevant to earlier termination); *Jordan v. U.S. Bank*, 2008 WL 2783229, at FN 1 (E.D. Mo. July 15, 2008) (excluding paragraphs from submitted Statement of Facts because the events occurred post-termination and therefore were not relevant to the termination); *see also Bowie v. Maddox*, 642 F.3d 1122, 1134-1135 (D.C. Cir. 2011).

Finally, pursuant to Federal Rule of Evidence 403 the email should be excluded because the introduction of such evidence is sought only to improperly influence the jury to incorrectly determine that Scripps has somehow, through its CEO's June 28, 2018 email, "admitted" liability. *Anderson v. Consolidated Rail Corp.*, 2000 WL 1201534, at *3 (E.D. Penn. Aug. 9, 2000) (finding corporate planning document not relevant when there was no evidence that document was seen by decision makers or that document factored into decisional process). Such is not the case, and the improper admission of this email would necessarily lengthen the trial beyond two weeks, require even more witnesses from Defendant to rebut the allegations asserted by virtue of its use, and would, respectfully, result in a mistrial. Further, evidence sought to be introduced through Mr. Symson's email is of limited probative value and outweighed by a likelihood of unfair prejudice, confusion of issues, misleading of the jury, and by considerations of undue delay, waste of time, and needless presentation of cumulative evidence. Mr. Symson is not listed as a witness by either party and is not involved in this lawsuit.

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's Motion and exclude, at trial, any evidence, testimony, or references thereto which concern Scripps' CEO Adam Symson's June 28, 2018 email.

## DEFENDANT'S MOTION IN LIMINE NO. 19 TO EXCLUDE REFERENCES TO THE PROMOTION OF AN IN-HOUSE EMPLOYMENT LAWYER TO THE TITLE OF VICE-PRESIDENT, EMPLOYMENT AND LABOR LAW, AND CHIEF DIVERSITY OFFICER AND/OR ANY REFERENCES TO THE HIRING OR PROMOTION OF OTHER AFRICAN-AMERICAN EMPLOYEES

Plaintiff has argued in discovery that the April, 2018 promotion of Ms. Wright, a long-time in house counsel to the above title is somehow direct evidence of retaliation. As this *motion in limine* illustrates, Defendant has had to defend against a plethora of wrong-headed discovery and arguments during the whirlwind discovery phase of this case. The promotion of Ms. Wright, an African-American, to this role, cannot in any logical way constitute evidence of retaliation or discrimination against Plaintiff. The promotion or hiring of an African-American can in no way clearly and unmistakably demonstrate discrimination or retaliation against Plaintiff, an African-American. *Hutton v. Maynard*, 812 F.3d 679, 683-84 (8th Cir. 2016). Plaintiff has also made the related argument that the hiring or promotion of other African-Americans at the station somehow is probative of her discrimination and retaliation claim. Nothing could be further from the truth, both logically and legally. Ms. Wright's promotion also occurred before the discovery period was opened up and prior to Plaintiff's retaliation claim arose for which discovery was opened up. Ms. Wright's promotion cannot be added to this claim as it predated the new claim. Plaintiff must be precluded from any reference to the promotion of Ms. Wright and/or to the hiring or promotion of any other African-American employee. Such "evidence" turns the standard Plaintiff must prove in this case on its head and would clearly confuse the issues and prejudice Defendant unduly under

Rule 403. Allowing this evidence would result in a series of mini trials concerning the promotion of Ms. Wright and her qualifications and reasons for the promotion as well as the decision making behind the hiring and promoting of other African Americans Plaintiff seeks to attack as somehow discriminatory and/or retaliatory.

## DEFENDANT'S MOTION *IN LIMINE* NO. 20 TO EXCLUDE REFERENCES TO OTHER KSHB EMPLOYEES' FAILURE TO GRANT FACEBOOK ADMINISTRATIVE RIGHTS TO STATION MANAGEMENT

Defendant hereby moves *in limine* to exclude any evidence, documents, and testimony regarding other KSHB employees' alleged failure to grant administrative rights to Station management. Defendant anticipates that Plaintiff will seek to introduce evidence post-dating Plaintiff's employment that Defendant sought to actively obtain the Facebook administrative rights to the professional Facebook pages of a number of KSHB employees after Plaintiff's contract was not renewed. Plaintiff will seek to introduce evidence that Defendant did not consistently enforce its Social Media Policy. Such evidence however is not relevant and confuses the issues. Plaintiff, even though she did not grant administrative rights to Station management, was not disciplined for this failure. Further, the alleged failure to grant administrative rights to one's professional Facebook page is not equivalent to a violation of the Social Media Policy for posting offensive content based on race and sex for which co-workers complain. Further, the Social Media Policy references termination only for the portion of the policy violation involving the conduct for which Plaintiff engaged and Defendant has the right to treat issues involving race and sex for which complaints are received with a zero tolerance approach. Plaintiff's offering of this evidence seeks to put each KSHB witness who is also a station employee on trial and prejudices Defendant by way of improper comparisons. *Gacek v. Owens & Minor Distribution, Inc.*, 666 F.3d 1142, 1147 (8th Cir. 2012) (refusing to consider the discipline of other employees for violations of the same

policies because their conduct was not of "comparable seriousness" with plaintiff's conduct). As such, Defendant respectfully requests that any evidence of KSHB employee's failure to grant administrative rights to management for their professional pages be excluded.

## DEFENDANT'S MOTION *IN LIMINE* NO. 21 TO EXCLUDE REFERENCES TO POTENTIAL INSURANCE COVERAGE FOR ANY DAMAGES AWARDED TO PLAINTIFF OR REFERENCE TO ANY INTEREST OF DEFENDANT IN SETTLING THE LAWSUIT

Defendant hereby moves *in limine* to exclude any evidence, documents, and witness testimony regarding the potential that insurance coverage might cover any damages awarded to Plaintiff. Such evidence is prejudicial and has the tendency to influence jurors to punish Defendant disproportionally or because of a belief that a damages award will be paid by insurance and that consequently, it will not hurt Defendant if Plaintiff is "given something" for the trouble of taking the case to trial. *See* Fed. R. Evid. 411; *Charter v. Chleborad*, 551 F.2d 246, 248 (8th Cir. 1977) (recognizing that the existence of a liability insurance policy is not permitted as evidence of wrongful conduct because it "is of questionable probative value or relevance and is often prejudicial"). The same is true to the extent that Plaintiff references any alleged interest by Defendant to settle the case which could prejudice Defendant by creating the wrong impression that Defendant believes it has liability/exposure and has interest in settling for that reason. Any such evidence is prejudicial and should be expressly excluded by the Court.

## DEFENDANT'S MOTION *IN LIMINE* NO. 22 TO EXCLUDE REFERENCES TO PLAINTIFF'S ALLEGED COVERAGE OF THE KKK

Defendant hereby moves *in limine* to exclude any evidence, documents, and witness testimony regarding Plaintiff's coverage of a KKK-related news story in 2010. Such evidence is outside the statute of limitations, prejudicial, and highly inflammatory. *United States v. Betcher*, 534 F.3d 820, 825 (8th Cir. 2008) ("Evidence which is 'so inflammatory on its face as to divert

the jury's attention from the material issues in the trial is unfairly prejudicial." (quoting *United States v. Johnson*, 463 F.3d 803, 809 (8th Cir. 2006)).  That Plaintiff was assigned a story well beyond the limitations period and by a manager who is no longer with the Station is not relevant to the discrimination and retaliation claims she now maintains.  The managers in this case had nothing to do with such assignment and this evidence, if ever admissible, related to Plaintiff's now-dismissed hostile work environment claim. Moreover, a work assignment (even if tough, difficult or challenging) is not an adverse employment action that can support a discrimination claim, *Allen v. Johnson*, 2014 WL 7334901, at *11 (M.D. La. Dec. 19, 2014) (assigned task of cleaning out trailer, a regular assignment for employee's position, was not discriminatory), particularly, whereas here the decision makers regarding the story assignment would have been made by management who left the Station long before the alleged activity giving rise to Plaintiff's current claims.  *Roddy v. Monsanto Co.*, 6 Fed. App'x 549, 553 (8th Cir. 2001) (affirming exclusion of "background evidence . . . [that] had no clear connection with [employer's] decisionmakers within that time frame").  Consequently, any evidence offered about Plaintiff's assignment to cover a KKK member in 2010 is prejudicial and should be expressly excluded by the Court.

## DEFENDANT'S MOTION *IN LIMINE* NO. 23 TO EXCLUDE REFERENCES TO PLAINTIFF'S COVERAGE OF THE "URBAN CORE"

Defendant hereby moves *in limine* to exclude any evidence, documents, and witness testimony regarding Plaintiff's coverage of what she describes as the "urban core" of the Kansas City news market.  Plaintiff has no claim concerning such an assignment, which, if ever relevant, was part of her hostile work environment claim.  Moreover, work assignments (even if tough, difficult or challenging) are not adverse employment actions that can support a discrimination claim. *See Allen*, 2014 WL 7334901, at *11. Consequently, any evidence offered about Plaintiff's assignment to Kansas City's so-called "urban core" is prejudicial and should be expressly excluded

by the Court. *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (affirming district court's exclusion of what plaintiff alleged were undesirable assignments because "it was hard to see how the staffing decisions reflect discrimination at all"). Such evidence would only serve to prejudice Defendant under Rule 403 and would lengthen and complicate the trial to a discussion involving various assignments of reporters over the years for various reasons involving multiple people not involved in the case. Consequently, any evidence offered about Plaintiff's assignments in what she calls to the "urban core" should be excluded.

## DEFENDANT'S MOTION *IN LIMINE* NO. 24 TO EXCLUDE REFERENCES TO PLAINTIFF BEING REQUIRED TO MMJ WHILE PREGNANT

Defendant hereby moves *in limine* to exclude any evidence, documents, and witness testimony regarding Carla Kreeger's refusal to reassign Plaintiff's scheduled MMJ assignment in **2016** while Plaintiff was pregnant. Defendant anticipates that Plaintiff will argue that her assignment to MMJ—meaning to both shoot her own video footage and report on a news story— while pregnant is evidence of discriminatory treatment by Defendant. That Plaintiff was given an assignment, which was not subsequently reassigned at Plaintiff's request, by a manager who is no longer with the Station is not relevant to the discrimination and retaliation claims she now maintains. This evidence is simply irrelevant in that it involves a person not a decisionmaker, and Plaintiff does not have a hostile work environment claim. Moreover, a work assignment (even if tough, difficult or challenging) is not an adverse employment action that can support a discrimination claim. *See Allen*, 2014 WL 7334901, at *11. Moreover, to suggest that the assignment should not have been given to her because she was pregnant at the time has the tendency to confuse the jury to believe they may be deciding on a pregnancy discrimination claim when no such claim exists in the case. As such, any evidence that Plaintiff had an undesirable

work assignment while pregnant should be expressly excluded by the Court. *See Littleton*, 568
F.3d at 648; *Allen*, 2014 WL 7334901, at *11.

## DEFENDANT'S MOTION *IN LIMINE* NO. 25 TO EXCLUDE REFERENCES TO PLAINTIFF'S ALLEGED PURSUIT OF THE ANCHOR POSITION WHICH LINDSAY SHIVELY RECEIVED

Defendant hereby moves *in limine* to exclude any evidence, documents, and witness
testimony regarding Plaintiff's alleged pursuit of the anchor position which Lindsay Shively
received in 2015. Any such failure to promote claim has been previously dismissed by this Court.
(Dkt. No. 115; Dkt. No. 215.) Indeed, the Court has previously indicated that the only remaining
claims in the case are (1) the 2014 Leadership Champion[4] position; (2) the May 2015 suspension;
(3) the investigative reporter position and (4) the 2018 paid suspension and contract non-renewal.
(Dkt. No. 115; Dkt. No. 215.) No other claims exist in the case and as such, should not be offered
as evidence of discrimination. Defendant has relied on this Court's Order that the claim involving
Ms. Shively's position was out of the case and planned its discovery strategy accordingly. That
Plaintiff was not promoted to the anchor position which Ms. Shively received is no longer at issue
in this case and to introduce any evidence on this issue, previously decided by the court, would be
confusing to the jury and highly prejudicial to Defendant who would have to prepare to defend
itself against a claim that the Court has already dismissed as a matter of law. *Littleton*, 568 F.3d
at 648. Any references by Plaintiff to this position would needlessly extend the trial, forcing
Defendant to call Ms. Shively and other witnesses and evidence to defend against matters that are

---

[4] As indicated above, Defendant does not believe that the Leadership Champion position should remain in the case as
Plaintiff has associated no damages with this allegation and did not mention the Leadership Champion position at her
deposition when questioned concerning what claims she was asserting. When specifically asked to detail her claim
for damages in this case, Plaintiff did not identify the Leadership Champion position nor associate any damages with
it. (Plaintiff's Responses to Defendant's First Interrogatories, Answer to Interrogatory No. 10). Without a claim for
damages, the Court lacks jurisdiction to entertain such a claim. *Advantage Media, L.L.C. v. City of Eden Prairie*, 456
F.3d 793, 803 (8th Cir. 2006) (indicating a plaintiff must be injured in some way to have standing to pursue its claims);
*see also M.W. ex rel. Williams v. Avilla R-XIII School Dist.*, 2011 WL 3354933 at *3 (W.D. Mo. Aug. 3, 2011) (holding
that plaintiffs could not pursue claims where they could not allege damages resulting from those claims).

not in the lawsuit. Consequently, any evidence offered which would suggest that Plaintiff maintains a failure to be promoted to the anchor position Lindsay Shively received in Spring 2015 is prejudicial and should be expressly excluded by the Court.

### DEFENDANT'S MOTION *IN LIMINE* NO. 26 TO EXCLUDE REFERENCES TO MEDIA COVERAGE DURING THE TRIAL

Any reported coverage of this case in the media, whether in print, broadcast, or social media, is properly excluded as inadmissible hearsay pursuant to Fed. R. Evid. 802. This evidence would also be irrelevant given it has no tendency to make any fact more or less probable. Because this evidence would be irrelevant, it must be excluded. Fed. R. Evid. 402. Such evidence or references to media coverage would also be unnecessarily duplicative wherein they only serve to confuse the jury, or prejudice Defendant, where it imprints statements or observations by a third party not expressed at trial. Because this evidence would be needlessly duplicative, confusing and prejudicial, and because it has no probative value, it must be excluded. Fed. R. Evid. 403. Accordingly, Plaintiff should be precluded, at trial, from referring to any evidence, testimony, or references thereto concerning media coverage of this case.

### DEFENDANT'S MOTION *IN LIMINE* NO. 27 TO EXCLUDE EVIDENCE OR ALLEGATIONS RELATING TO THIS COURT'S IN LIMINE RULINGS CONCERNING TAX RETURNS

Plaintiff told this Court on April 10, 2018:

*"[A]ny attempt to touch on a legal ruling could lead to unfair prejudice and misleading the jury."* (Dkt. No. 122 at p. 2.) The same is true for any attempt by Plaintiff to reference this Court's previous rulings or views prohibiting Defendant's efforts to introduce Plaintiff's tax return information for its bearing on Plaintiff's credibility and/or any attempt by Plaintiff to reference the Judge's rulings prohibiting discovery on tax returns, financial information, or any

other rulings or leanings by the Judge concerning tax information or any other evidence in the case.

Any reference to this Court's legal ruling on the tax return issue would unfairly prejudice Defendant. Plaintiff cannot be heard to suggest otherwise—she informed the Court on April 20 that references to the Court's legal ruling would unfairly prejudice and mislead the jury. Neither Plaintiff's views concerning the significance of the tax return issue nor the Court's rulings relating to the tax return issue is relevant to the Jury's decision. Any such reference to the Court's legal rulings would serve only to impugn Defendant's business judgment concerning Plaintiff's tax return misconduct and its impact on her credibility as a reporter under her employment contract by arguing that the Court already determined in its judgment that such tax return issues do not impact her credibility. The law not only permits Defendant to exercise its business judgment concerning this matter, but Plaintiff's Employment Contract (which she signed while represented by counsel in August 2017) also grants Defendant additional rights to not renew her employment contract in its discretion for good, bad, or no reason at all. Any reference by Plaintiff to this Court's legal rulings concerning the tax returns and/or reference to the Judge "prohibiting KSHB from pursuing the tax return issue" must be excluded. Such a reference would create the unfairly prejudicial impression that the Court disagrees with Defendant's judgment. This is tantamount to making the Court's legal ruling evidence and even presenting the Court as a witness to whom Defendant would be powerless to cross examine or impugn. Plaintiff's contract with Defendant and its interpretation of that contract govern its rights to not renew the contract based on its view of her credibility and how her actions impact other provisions of that contract. Plaintiff's reference to the Court's view of the tax return is not only irrelevant but also would substantially prejudice Defendant unfairly under Rule 403.

Plaintiff's reference to the Judge's rulings and/or views on the tax return issue is tantamount to commenting on the evidence and would reflect an appearance that the Court is not disinterested in the evidence. The law does not permit Plaintiff to bootstrap herself to the credibility of this Court in an effort to prove her claim and her reference to the Court's *in limine* ruling must be precluded.

### DEFENDANT'S MOTION *IN LIMINE* NO. 28 EXCLUDING EVIDENCE OR ALLEGATIONS DEFENDANT ACTED WRONGFULLY OR IMPROPERLY BY RELYING ON EVIDENCE OF PLAINTIFF'S TAX INFORMATION THAT WAS LEARNED DURING THE PENDENCY OF THIS LAWSUIT

Plaintiff's counsel at various times has suggested the incorrect legal view that Defendant was precluded from acting upon the information concerning Plaintiff's tax filing filings because it was learned during the pendency of this lawsuit. In later briefing, however, Plaintiff **conceded** that the law does not somehow require Defendant to not act on such tax information just because it was learned as result of Plaintiff's lawsuit. *See* Dkt. No. 202 at 13. Indeed, the law is clear that employers are not precluded from terminating an employee even for conduct "inextricably intertwined" with protected activity. *Weesner v. U.S. Bancorp,* 2011 WL 4471765 (D. Minn. 2011) at * 11 (citing *Alvarez*, 626 F.3d 410, 417 (8th Cir. 2010). The *en banc* Eighth Circuit held in *Kiel v. Select Articials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999), that "[a]lthough contesting an unlawful employment practice is protected conduct, the anti- discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." Any argument or evidence concerning the fact that the tax information concerning Plaintiff's personal tax returns "*only became known to KSHB during her pending lawsuit*" falsely reflects that information learned in a lawsuit is somehow off limits to the employer. Such an argument is contrary to the above authority and to the Supreme Court's *McKennon* case and its progeny, among others. Arguments or evidence by Plaintiff at the trial

along these lines do not "present a cognizable legal theory" by Plaintiff's own concession and any such evidence or commentary must be precluded at trial. *McKennon v. Nashville Banner Publishing Co*., 513 U.S. 252 (1995); *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir. 2001). Plaintiff therefore must be precluded *in limine* from offering evidence or allegations that Defendant was somehow obligated to demonstrate "examples" of disciplining other individuals for tax violations and/or to seek and/or review tax filing/tax return information from other employees before not renewing Plaintiff's contract for her admitted tax failures.

## DEFENDANT'S MOTION *IN LIMINE* NO. 29 TO EXCLUDE ARGUMENT AND/OR EVIDENCE INDICATING THAT DEFENDANT ACTED UNLAWFULLY OR WRONGLY BY NOT DEMONSTRATING OTHER EXAMPLES OF TAKING ACTION AGAINST EMPLOYEES CONCERNING TAX RETURNS AND/OR SEEKING OUT TAX INFORMATION FROM EMPLOYEES

As the Eighth Circuit indicates, employers are not required to demonstrate examples of enforcing policy violations against employees other than Plaintiff. *See, e.g., Evance v. Trumann Health Services, LLC*, 719 F.3d 673, 678 (8th Cir. 2013); *Barber v. CI Truck Driver Training, LLC*, 656 F.3d 782, 795 (8th Cir. 2001); *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 859 (8th Cir. 2004). Any argument or evidence from Plaintiff along these lines is not only irrelevant but unduly prejudicial against Defendant under Rule 403 in that it misstates the law and implies a duty where none exists. Further, such argument and evidence is misleading and confuses the issues in that Plaintiff's contract actually requires her compliance with the law, which includes the tax laws. Not all employees for Defendant are on air personalities and not all employees for Defendant have Plaintiff's contractual obligations. The fact that Plaintiff has a pending lawsuit against the company and is seeking damages provided Defendant with a legitimate reason to inquire concerning her tax returns. Tax returns are a source of income to verify alleged damages and Plaintiff placed her income at issue by suing Defendant and seeking damages. Even if the Court disagrees that tax returns are relevant or admissible in an employment case for credibility,

damages, or for any other reason, there is plethora of legal authority suggesting otherwise. No authority exists for the proposition that inquiry of an employee concerning tax returns is inappropriate unless the employer has inquired of other employees concerning their tax filing status. Such an argument fails to recognize that employees who are seeking damages from the employer are simply not similarly situated to employees who are not seeking damages from the employer. Any attempt by Plaintiff to introduce such evidence or argument is not only irrelevant, but unduly prejudices Defendant under Rule 403. The employer has the right, but not obligation, to act on information it discovers during a current employee's lawsuit when the information has a bearing on the decision to renew the employee's contract. Any other result would mean that employees who file lawsuits receive greater rights because the lawsuit would mean the employer has to ignore information learned during that lawsuit. Such a result is not the law. Even if the employer learned the information upon which it acted as part of Plaintiff's protected activity—such as, for example, complaining of discrimination or submitting FMLA paperwork—such a source of knowledge that is inextricably intertwined with protected activity does not render the knowledge somehow "off limits" to the employer. Indeed, the law is clear that employers are not precluded from terminating an employee even for conduct "inextricably intertwined" with protected activity. *Weesner v. U.S. Bancorp,* 2011 WL 4471765 (D. Minn. 2011) at * 11 (citing *Alvarez*, 626 F.3d 410, 417 (8th Cir. 2010). The *en banc* Eighth Circuit held in *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir.1999), that "[a]lthough contesting an unlawful employment practice is protected conduct, the anti- discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." Plaintiff's contract required her to follow the law and the suggestion that her employer somehow has to demonstrate other examples taking the same action before it can act

against her is entirely wrong as a matter of law.  Such evidence and argument must be precluded *in limine*.

## DEFENDANT'S MOTION *IN LIMINE* NO. 30 TO EXCLUDE REFERENCES TO THE VIEWS OF HER LAWYER OR TO ARGUMENTS MADE BY HER LAWYER BECAUSE HE CANNOT SERVE AS A WITNESS IN THIS CASE WHILE ALSO SERVING AS COUNSEL

Plaintiff's counsel, Dennis Egan, attended Plaintiff's interview conducted by Defendant's Outside Investigator, Ann Molloy in May, 2018.  Mr. Egan communicated with Ms. Molloy in writing and on the phone and various such communications are reflected in Ms. Molloy's file.  These communications include Mr. Egan's comments on the evidence during the investigation and his injection of issues surrounding the pending lawsuit into her investigation.  Ms. Molloy's notes reflect that Mr. Egan interjected himself into the interview and at times "answered questions for his client."  Further, the file includes various commentary from Mr. Egan such as stating that various pieces of evidence were "fishy" and the like.  Counsel for Defendant sought Plaintiff's counsel's stipulation that he would not attempt to introduce evidence that reflected his own commentary or opinions, but Plaintiff's counsel refused to stipulate.  Plaintiff's lawyer's communications with the outside investigator cannot be introduced by Plaintiff as evidence because this would result in Plaintiff's lawyer acting as witness in this case.  He cannot serve as both a witness and an advocate.  The evidence must be stricken as it would be unduly prejudicial under Rule 403.

Dated: December 21, 2018                                 Respectfully submitted,


                                                         By:
                                                                */s/ M. Scott McIntyre*
                                                         Mark P. Johnson (MBN 30740)
                                                         Kate Hart (MBN 61601)
                                                         Dentons US LLP
                                                         4520 Main Street, Suite 1100
                                                         Kansas City, Missouri 64111-7700
                                                         Telephone (816) 460-2400
                                                         Facsimile (816) 531-7545
                                                         Email: mark.johnson@dentons.com
                                                         Email: kate.hart@dentons.com

M. Scott McIntyre (*pro hac vice*)
                                                         Baker & Hostetler LLP
                                                         312 Walnut Street, Suite 3200
                                                         Cincinnati, OH 45202
                                                         Telephone: (513) 852-2622
                                                         Facsimile: (513) 929-0303
                                                         Email: smcintyre@bakerlaw.com
                                                         Rachel M. Smith (*pro hac vice*)
                                                         Baker & Hostetler LLP
                                                         811 Main Street, Suite 1100
                                                         Houston, TX 77002-6111
                                                         Telephone: (713) 646-1386
                                                         Facsimile: (713) 751-1717
                                                         Email: rsmith@bakerlaw.com

                                                         *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify on this 21st day of December 2018, I filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will notify the following counsel of record:

Dennis E. Egan
The Popham Law Firm
712 Broadway, Suite 100
Kansas City, MO 64105
degan@pophamlaw.com

*Attorney for Plaintiff*

/s/ M. Scott McIntyre
*Attorney for Defendants*