IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

LISA BENSON COOPER,           )
                              )
            Plaintiff,        )
v.                            )    No. 17-0041-CV-W-BP
                              )
SCRIPPS MEDIA, INC., d/b/a KSHB-TV 41, )
                              )
            Defendant.        )

**ORDER AND OPINION**
**(1) GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES, FRONT PAY, AND OTHER EQUITABLE RELIEF, AND**
**(2) DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

Following jury verdicts (and a resulting Clerk's Judgment) in favor of Plaintiff on two claims, Plaintiff filed a Motion to Amend Judgment, seeking (1) front pay or reinstatement, (2) other equitable or injunctive relief, (3) attorney's fees, and (4) costs. Defendant filed its own Motion for Fees and Costs. For the following reasons, Plaintiff's motion, (Doc. 398), is **GRANTED IN PART** and Defendant's motion, (Doc. 407), is **DENIED**.

**I. BACKGROUND**

Plaintiff filed this suit in state court, asserting claims of racial discrimination, hostile work environment, and retaliation. Defendant removed the case to federal court. While the case was pending Defendant elected not to renew Plaintiff's contract, and Plaintiff added another claim of retaliation based on that decision.

Summary judgment was granted to Defendant on some claims, and at trial Plaintiff elected not to submit some of her claims to the jury. Ultimately, the following four claims, all based on 42 U.S.C. § 1981, were submitted to the jury:

- Plaintiff was denied a promotion to weekend anchor in 2013 based on her race.
- Plaintiff was denied a promotion to consumer investigative reporter in 2015 based on her race.
- Plaintiff was suspended without pay for two days in 2015 in retaliation for complaints about discrimination, ("the 2015 retaliation claim").
- Plaintiff's contract was not renewed in 2018 in retaliation for filing this lawsuit, ("the 2018 retaliation claim").

The jury found for Defendant on the two promotion claims. (Doc. 393, pp. 1-2.)[1] The jury found for Plaintiff on the 2015 retaliation claim and awarded her $1,000 in actual damages and $50,000 in punitive damages. (Doc. 393, p. 3.) The jury also found for Plaintiff on the 2018 retaliation claim and awarded her $25,000 in actual damages and $125,000 in punitive damages. (Doc. 393, p. 4.) Judgment was entered accordingly, (Doc. 394), and in a separate Order issued simultaneously with this one the Court has denied Defendant's Renewed Motion for Judgment as a Matter of Law.

Plaintiff has filed a motion to amend the judgment to include awards of front pay or reinstatement, other equitable relief, attorney's fees, and costs. In addition to opposing Plaintiff's motion, Defendant has filed its own motion for fees and costs. Additional facts will be discussed as necessary to resolve the parties' competing arguments. And, in the interest of clarity the Court will address the parties' requests and arguments as necessary to create a comprehensive organizational framework (instead of simply addressing Plaintiff's motion and then Defendant's motion). As detailed below, Plaintiff's motion is granted in part and denied in part, and Defendant's motion is denied.

---

[1] All page numbers are those generated by the Court's CM/ECF system.

## II. DISCUSSION

### A. Plaintiff's Request for Front Pay or Reinstatement

A prevailing plaintiff in a civil rights case is entitled to appropriate equitable or injunctive relief. And, when the plaintiff's claim involves an unlawful termination (as is the case here), the plaintiff is entitled to request reinstatement. *E.g., Salitros v. Chrysler Corp.,* 306 F.3d 562, 572 (8th Cir. 2002).[2] As discussed below, front pay may be a substitute for reinstatement. The Court held a hearing on the issue on June 24, 2019.

In her written submissions Plaintiff mentions reinstatement, but she does not specifically state that she wants to be reinstated and it does not appear that she seriously seeks such relief, (*see, e.g.,* Doc. 399, pp. 7, 21), although she testified during the hearing that she would accept a job from Defendant if it were offered. In contrast, Defendant argued in writing that reinstatement is inappropriate because of the animosity between Plaintiff and her former co-workers, (Doc. 414, p. 10), and at the hearing, the manager of the station where Plaintiff worked (Steve Watt) testified that he did not believe that Plaintiff could work effectively in the station. Based on the lack of a clear request from Plaintiff, a clear statement from Defendant, the testimony offered at trial, and Watt's testimony about his likely recommendation to those who might offer Plaintiff a job with Defendant, the Court finds that reinstatement is inappropriate in this case; "the cases are legion that substantial hostility, above that normally incident to litigation, is a sound basis for denying reinstatement." *Mathieu v. Gopher News Co.,* 273 F.3d 769, 778 (8th Cir. 2001) (quotations and citations omitted).

---

[2] These principles are the same for all civil rights claims, regardless of whether they are based on Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, or (as is the case here), 42 U.S.C. § 1981. Therefore, the Court can (and will) rely on cases involving any civil rights statute and not just cases involving § 1981.

With reinstatement not a viable option, the Court must consider whether to award front pay. "Front pay is an exceptional remedy and should only be awarded in lieu of reinstatement when extraordinary circumstances render reinstatement impractical or impossible." *Id.*; *see also Hartley v. Dillard's, Inc.,* 310 F.3d 1054, 1063 (8th Cir. 2002). Front pay is regarded as an equitable remedy because it is a substitute for the equitable remedy of reinstatement, and whether to award it and the amount to be awarded are matters committed to the Court's discretion. *E.g., Hartley,* 310 F.3d at 1063; *Mathieu,* 273 F.3d at 779. Here, Plaintiff asks for front pay from the date of the verdict through her retirement age – a period of more than twenty years. In its written arguments Defendant argued that the amount of front pay should be no more than two years, (Doc. 414, p. 8), and at the hearing suggested that the front pay should not exceed six months.[3]

In determining the amount of front pay to be awarded, the Court is not limited in the factors it may consider and instead may consider all the circumstances of the case. *E.g., Mathieu,* 273 F.3d at 778. In particular, the Court should consider Plaintiff's ability to obtain employment with comparable compensation. *E.g., Hartley,* 310 F.3d at 1063 (citing *E.E.O.C. v. HBE Corp.,* 135 F.3d 543, 555 (8th Cir. 1998)). A successful plaintiff is required to mitigate her damages by trying to find work to replace the job that was lost. *E.g., Mathieu,* 273 F.3d at 779 (citing *United Paperworkers Int'l Union, AFL-CIO, Local 274 v. Champion Int'l Corp.,* 81 F.3d 798, 805 (8th Cir. 1996)). This consideration is important; while the award of equitable relief should make Plaintiff whole, it should not present her with a windfall.

---

[3] The Court rejects Defendant's argument that "Plaintiff's recovery of punitive damages . . . indicates that no front pay should be awarded in this case." (Doc. 414, p. 15.) Punitive damages and front pay fulfill different objectives, and the award of one has nothing to do with whether to award the other. The Court also rejects Defendant's contention that Plaintiff's (mis)conduct during her employment disqualifies her from receiving front pay; Defendant's arguments would be contrary to the jury's findings, and the Court cannot reject or contradict those findings. *E.g., Mathieu,* 273 F.3d at 778.

In this case, Plaintiff is forty-three years of age. This fact augurs against awarding her front pay through her retirement age. *Compare Mathieu,* 273 F.3d at 779 (plaintiff was near retirement age by the time the trial ended) *with United Paperworkers,* 81 F.3d at 805 ("Instead of warranting a lifetime of front pay, Fiedler's relatively young age should improve his future opportunities to mitigate through other employment.") Testimony at trial also established that Plaintiff could find other work; in fact, she rejected a new job in June 2018 because she wanted to wait until the trial was completed before re-entering the job market. Regardless of her reason for waiting, the evidence establishes that she was employable. Plaintiff's briefing also provides no reason why she cannot find another job. Finally, and most significantly, no evidence offered during the hearing suggests that Plaintiff will never be able to find another job. The only testimony regarding the expected length of Plaintiff's unemployment came from Defendant's expert, Mark Erwin, who testified that the outer limit of her expected unemployment would be twenty-six weeks.[4]

At the hearing, Plaintiff testified to her efforts to find work after the trial was over. She testified that she has applied for more than one hundred jobs, but no supportive documentation was introduced. Moreover, her testimony establishes that at least some of her job applications consisted of communicating with her contacts at various news stations and other businesses as opposed to contacting management or HR departments. There is no documentation regarding the nature of the jobs for which Plaintiff has applied or the effectiveness of her job search. Finally, Plaintiff has expended time, money and other resources attempting to establish herself in another business/field. While Plaintiff is entitled to, as she put it, "reinvent" herself, her inability to obtain work in this new field to date does not demonstrate that Plaintiff will not be able to do so. There

---

[4] Plaintiff proffered expert testimony from Kurt Krueger, but his testimony – by his own admission – did not bear on this issue.

was no evidence regarding her efforts to obtain paying work in this new field, and she has been engaged in this endeavor for a relatively short period of time. Therefore, these facts also do not support front pay through the age of retirement.

Plaintiff cites other factors to support her request, but the Court does not find that those factors justify a lengthy period of front pay. For instance, Plaintiff worked for Defendant for fourteen years. This factor might justify an award of front pay, but it is not particularly probative on the issue of how much front pay to award. *See Ogden v. Wax Works, Inc.,* 29 F. Supp. 2d 1003, 1017 (N.D. Iowa 1998) (considering plaintiff's tenure to decide whether to award front pay, not how much). Evidence at trial demonstrated that, in this industry, few employees stay with the same employer for an extended period, and there is no reason to believe that Plaintiff would have remained employed by Defendant through retirement. For the reasons stated above, Plaintiff has not satisfied her burden of demonstrating that she is entitled to a lengthy period of front pay, much less front pay from the date of the verdict until she reaches retirement age.

The Court is also not persuaded that six months is a sufficient period of front pay. As noted earlier, Defendant presented expert testimony from Mark Erwin suggesting that this would be the lengthiest period of expected unemployment, but his testimony was not tailored to Plaintiff's circumstances. Based on the evidence in the Record,[5] the Court concludes that Defendant's original suggestion that Plaintiff receive no more than two years of front pay is closer to an appropriate outcome. Accordingly, the Court amends the judgment to include an award of front pay in the amount of $110,000.

---

[5] Plaintiff filed a motion to submit Krueger's report to support her application for front pay. Plaintiff had an opportunity to seek admission of the report during the hearing and failed to do so; therefore, this motion, (Doc. 397), is denied. Similarly, Defendant filed a motion to file expert reports from Erwin and Susan Willower. At the hearing Defendant sought to admit Willower's report but not Erwin's; therefore, Defendant's motion, (Doc. 462), is granted to the extent it seeks to submit Willower's report but denied to the extent that it seeks to submit Erwin's report.

### B. Plaintiff's Request for Additional Equitable Relief

Plaintiff requests additional injunctive relief and makes five specific proposals. The Court concludes that none of these requests is appropriate, although in one instance an alternative form of relief will be ordered.

As an initial matter, the Court rejects Defendant's argument that Plaintiff is not entitled to seek injunctive relief because she did not request it at trial. (Doc. 414, p. 19.) Equitable relief is not determined by the jury, so Plaintiff was not required to request equitable relief at trial. The Court also rejects Defendant's argument that injunctive relief is inappropriate unless there is evidence of a pattern or practice of violations by the defendant. Defendant cites cases where such evidence existed, and such evidence frequently justifies injunctive relief – but those cases do not conclude that such evidence is necessary for *all* forms of equitable relief. The evidence necessary to support equitable relief obviously depends upon the equitable relief requested. Some – but not all – of the relief Plaintiff requests is only appropriate if there are widespread violations. Finally, Defendant contends that Plaintiff did not request injunctive relief in her pleadings. However, the Second Amended Complaint asks, *inter alia*, "for such other relief as the court deems just and proper." (Doc. 180, p. 12.) Given the regularity with which injunctive relief is awarded in civil rights cases, the Court holds that this request is sufficient to permit an award of injunctive relief.

After reviewing the Record and the parties' arguments, the Court rejects most of Plaintiff's requests on the merits. Plaintiff first requests an injunction prohibiting Defendant from retaliating against employees. Injunctions that simply direct a party to obey the law are generally disfavored, *e.g., Sturgill v. United Parcel Serv., Inc.,* 512 F.3d 1024, 1035 (8th Cir. 2008); *Mulcahy v. Cheetah Learning LLC,* 386 F.3d 849, 852 n.1 (8th Cir. 2004), and the Court discerns no justification that overcomes the judiciary's reluctance to issue such injunctions. Regardless, it is more appropriate

for any individual who believes that he or she has been subjected to retaliation to bring an independent suit, rather than providing them with the option of coming to this Court and asking that Defendant be held in contempt.

Next, Plaintiff asks that the Court issue an injunction requiring Defendant to follow its internal rules and procedures. However, Plaintiff does not explain why such an order is legally justified, and the Court discerns no reason to interfere with Defendant's business operations in this manner.

Plaintiff's third request is for an order requiring that Defendant's employees be trained "on the science underlying inherent/implicit bias." (Doc. 399, p. 20.) The Court rejects this request for two related reasons. As noted in the Court's prior orders, implicit bias refers to quick associations of groups with stereotypical attributes that subconsciously affect decisionmaking. (*E.g.,* Doc. 345, p. 2.) The Court precluded the introduction of evidence about implicit bias because Plaintiff's discrimination required her to prove *intentional* discrimination, not *subconscious* discrimination, and evidence of the latter would confuse the jury. (Doc. 345.) Given the Court's prior ruling that implicit bias has no role with respect to Plaintiff's claims, injunctive relief that requires training on the issue is not justified. Moreover, Plaintiff did not prevail on her discrimination claims. For these reasons, Plaintiff's request that Defendant be ordered to provide training to its employees is denied.

Plaintiff's fourth request is for an order that Defendant justify in writing all adverse employment actions taken against employees who have engaged in protected activity. Plaintiff also asks that all such decisions be reviewed "by the decision makers as well as 2 higher levels of supervision." (Doc. 399, p. 21.) The Court sees no reason to interfere with Defendant's business

8

operations in this manner, particularly in the absence of any suggestion that Defendant has a significant history of engaging in retaliatory conduct.

Finally, Plaintiff asks that certain portions of her employment record be "expunged." She asks that all documents reflecting adversely on her performance be removed from her employment record, but the Court concludes that this request is broader than is justified by the jury's verdict. Alternatively, Plaintiff asks for an Order requiring Defendant to "expunge" certain discrete facts, particularly those underlying the claims that the jury found in her favor. While the Court agrees that some form of relief is appropriate, the Court is not persuaded that "expunging facts" is the most appropriate course. The events that gave rise to Defendant's retaliatory conduct occurred, and there is no reason to create an employment record that implies that they did not. Moreover, the jury's verdict merely indicates that Defendant would not have reacted in the manner that it did but for Plaintiff's protected activity. Finally, identifying the facts to be expunged presents unnecessary difficulties. The Court believes the most equitable course is to require Defendant to include copies of the jury's verdict on Verdict Forms C and D, (Doc. 393, pp. 3-4), in Plaintiff's employment file.

## C. Defendant's Motion for Attorney's Fees and Costs

Defendant contends that it is entitled to an award of attorney's fees and costs for two reasons. First, it contends that it is entitled to recover the fees and expenses it incurred (1) defending against frivolous claims and (2) addressing actions by Plaintiff's counsel that unreasonably and vexatiously increased the work that needed to be done in this lawsuit. Second, it argues that it is entitled to recover fees and costs pursuant to Rule 68 after Plaintiff rejected offers of judgment that purportedly provided more relief than what Plaintiff recovered at trial. As discussed below, the Court disagrees with both theories.

### *1. Defending Against (1) Frivolous Claims and (2) Plaintiff's Vexatious and Unreasonable Conduct*

Defendant contends that it is entitled to recover fees and costs based on Plaintiff's attorneys' actions and specifies that it "seeks recovery on only the six claims that it contends were frivolous: the claims under the [Missouri Human Rights Act], the Leadership Champion Claim, and the Claims in Violation of the Court's Order." (Doc. 405, p. 10.) It relies on both 28 U.S.C. § 1927 and the Court's inherent authority to sanction parties for misconduct.[6] Section 1927 permits an award of fees if an attorney "multiplies the proceedings in any case unreasonably and vexatiously . . . ." Defendant argues that the Court may also sanction a party who asserts frivolous claims; that is, a party who asserts claims lacking a reasonable basis in fact or law. The Court accepts these characterizations of its authority for the purpose of discussion, but as discussed below concludes that Plaintiff's counsel did not unreasonably and vexatiously multiply the proceedings or assert frivolous claims.

### *(a) Claims Under the Missouri Human Rights Act*

Plaintiff asserted claims under the Missouri Human Rights Act, ("the MHRA"), that mirrored her federal claims (except for the 2018 retaliation claim, for which there was no MHRA claim). More specifically, her MHRA claims arose from the same facts that gave rise to her § 1981 claims. The Court granted summary judgment to Defendant on the MHRA claims to the extent that they asserted a claim for hostile work environment or asserted claims for events before

---

[6] Defendant mentioned the fee shifting provisions of 42 U.S.C. § 1988, but then stated that it "is seeking recovery . . . exclusively under 28 U.S.C. § 1927 and the Court's inherent authority . . . ." (Doc. 405, p. 10.) In its Reply Suggestions, Defendant predicated its claim on § 1988. (Doc. 443, pp. 2-3.) Defendant's Reply Suggestions also amended its request under § 1927 to specify that it sought an award of fees from Plaintiff's counsel, after Plaintiff observed that § 1927 does not permit sanctions directly against a party. (Doc. 428, pp. 11-13.) In light of the Court's conclusion that Plaintiff did not present frivolous claims or engage in sanctionable conduct, there is no need to discuss these alterations in Defendant's positions further. *See Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 422 (1978) ("[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.").

December 3, 2014, and denied summary judgment in all other respects. At trial, Plaintiff elected not to submit her remaining MHRA claims to the jury and submitted only the § 1981 counterparts. Defendant contends that Plaintiff should never have brought her claims under the MHRA only to abandon them, and it is entitled to the fees and expenses incurred defending the MHRA claims. The Court disagrees for several reasons. The MHRA claims were alternative theories for recovery on the same claims asserted under § 1981. It is quite common (and not unreasonable) for attorneys to assert alternative theories of recovery based on a single set of facts and then elect a theory at trial after having the opportunity to observe how the trial unfolds. Moreover, the Court does not believe that significant "extra work" was required by Defendant because the claims arose from the same facts. Under these circumstances, the Court concludes that Plaintiff's actions were not vexatious or unreasonable. Finally, the Court concludes that the MHRA claims were not frivolous: most of them survived Defendant's summary judgment motion, and even those that did not had an arguable basis in law and fact. The mere fact that Plaintiff lost some of her MHRA claims and elected not to pursue others does not justify sanctions.

### *(b)  The Leadership Champion Position*

Plaintiff's pleadings included factual allegations about being denied an opportunity to be a "Leadership Champion." Defendant perceived these allegations to be an independent claim of disparate treatment and sought summary judgment. (Doc. 89, p. 13; Doc. 93, pp. 20-21.) The Court denied Defendant's request for summary judgment on all timely disparate treatment claims, which included this claim. (Doc. 115, p. 12.) At trial, Plaintiff introduced evidence about her non-appointment to Leadership Champion, but she did not propose jury instructions submitting it as a distinct claim. Defendant argues that Plaintiff's assertion of the claim was frivolous and unnecessarily increased the work done for this lawsuit, so it is entitled to its fees and costs.

11

The Court disagrees for several reasons. It is not entirely clear that the Leadership Champion position was ever intended as an independent claim. Defendant treated it as such, but Plaintiff's allegations may have simply constituted allegations of evidence supporting her claims, and as noted such evidence was introduced. Alternatively, even if Plaintiff intended her pleadings to assert an independent claim for being denied an opportunity to serve as Leadership Champion, Defendant is still not entitled to recover its fees and costs. The claim, if it was one, survived summary judgment, so the claim was not frivolous. And, a party is free to abandon claims at trial for a myriad of reasons, including assessment of the strengths and weaknesses of the claims based on the evidence admitted at trial and the desire to minimize confusion. The Court discerns nothing unreasonable or vexatious in Plaintiff's actions.

### *(c) Claims Asserted in Violation of the Court's Order*

Finally, Defendant seeks the fees and expenses it incurred seeking dismissal of claims that Plaintiff inserted in the Second Amended Complaint in violation of the Court's order. Defendant's request is denied.

The First Amended Complaint was filed in April 2017. (Doc. 21.) In May and June of 2018, Plaintiff was suspended and her contract was not renewed; she contended that these events were retaliation for her filing this lawsuit or refusing to settle this lawsuit. The parties generally agreed that Plaintiff should file a Second Amended Complaint incorporating this claim so that all of Plaintiff's claims could be addressed in a single lawsuit, and Plaintiff submitted a proposed Second Amended Complaint. (Doc. 175-1.) The Court granted Plaintiff leave to file a Second Amended Complaint, but in resolving disputes between the parties ruled that "Plaintiff cannot add other claims of retaliation" and identified specified paragraphs as examples that should not be included. (Doc. 178, p. 2.) Plaintiff nonetheless included allegations about other acts of

12

retaliation. Defendant filed a motion seeking, *inter alia,* to dismiss those claims. The Court granted this request, stating that any claims based on those events were dismissed. (Doc. 215, p. 4.) Defendant's motion also sought dismissal of other claims, but those requests were denied.

Defendant contends that because these claims should not have been added in the first place, it is entitled to recover the fees and expenses incurred in addressing this issue in the motion. There is no reason to award fees and costs for this rather minimal effort. Moreover, part of Plaintiff's justification for including the allegations was that they constituted evidence of retaliation and not independent claims; this argument was not frivolous. The Court is simply not persuaded that Plaintiff's conduct justifies making her (or her counsel) pay Defendant its fees and costs associated with that motion.

## *2. Rejected Offers of Judgment and Rule 68*

Defendant served on Plaintiff three documents entitled "Offer of Judgment Pursuant to Fed. R. Civ. P. 68." The first two were served in December 2017 and March 2018, before the Second Amended Complaint was filed. (Doc. 405-1; Doc. 405-2.) The third was served in October 2018, after the Second Amended Complaint containing the 2018 retaliation claim was filed. (Doc. 405-3.) Each offer uses virtually identical language. All three state that "[p]ursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendant submits this offer of judgment to Plaintiff, requesting that Plaintiff allow judgment in the above-referenced action, against her and in favor of Defendant, in exchange for the gross amount of" a specified amount of money intended to constitute Plaintiff's damages, attorney's fees and costs, and post- and pre-judgment interest. The offer concludes by stating that "any judgment resulting from the offer" is not to "be construed as an admission of liability or unlawful conduct by Defendant." Plaintiff did not accept any of these offers. Relying on Rule 68, Defendant argues that it is entitled to recover the costs and fees it

13

incurred after the offers were made. Plaintiff argues that the terms of the offers did not comply with Rule 68 because they required Plaintiff to agree that judgment would be entered against her instead of offering to allow judgment against Defendant. As discussed below, the Court agrees with Plaintiff.

Rule 68(a) provides that "a party defending against a claim may serve . . . an offer to allow judgment on specified terms, with costs then accrued." If the offer is accepted, the Court must enter judgment on the terms agreed to, but "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). However, to be a valid offer under Rule 68, the offer must provide that judgment will be entered against the defendant. "The critical feature of this portion of the Rule is that the offer be one that *allows judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued.* In other words, the drafters' concern was not so much with the particular components of offers, but with the *judgments* to be allowed against defendants." *Marek v. Chesny,* 473 U.S. 1, 6 (1985) (emphasis in original); *see also Simmons v. United Mortgage & Loan Inv., LLC,* 634 F.3d 754, 764 (4th Cir. 2011) (finding an offer was not governed by Rule 68, in part because it did not offer to allow judgment against the defendant). As the Eleventh Circuit explained:

> an accepted offer has the necessary judicial *imprimatur* of the court, in the crucial sense that it is an enforceable judgment against the defendant. Thus, unlike a defendant's voluntary change in conduct or a purely private settlement resulting in a dismissal, a Rule 68 judgment represents a judicially sanctioned change in the relationship between the parties.

*Utility Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.,* 298 F.3d 1238, 1248 (11th Cir. 2002) (quotations omitted).

Defendant does not dispute that a Rule 68 offer must provide for judgment to be entered against the party defending against the claim. Defendant also does not dispute that the terms of its

14

offers failed to provide for judgment against it. Instead, it characterizes the provision for judgment to be entered against Plaintiff as "inadvertent" and an "obvious clerical error" and asks the Court to conclude that the offers' references to Rule 68 sufficiently evidence its intent to actually offer that judgment be entered against it and not Plaintiff. (Doc. 443, pp. 15-16.)[7] This is not something that the Court can do; the Court is not empowered to rewrite each offer so that they say the opposite of what Defendant clearly stated on three separate occasions, and then give Defendant the benefits associated with Plaintiff's failure to accept the rewritten offers.[8]

A defendant may offer to settle a lawsuit in a myriad of ways, including by offering money to a plaintiff to allow judgment to be entered against the plaintiff. However, not all offers to settle comply with Rule 68 – nor must they comply with Rule 68. Here, the Defendant offered terms that did not comply with Rule 68, and the fact that Defendant's offers also referred to Rule 68 does not alter this conclusion. Therefore, Defendant is not entitled to an award of fees and costs pursuant to Rule 68.[9]

---

[7] In its Reply Suggestions, Defendant represents that "as soon as defense counsel realized the clerical error in the offer[s] of judgment, counsel served on Plaintiff a revised offer of judgment in the same amount. *See* Exhibit A." (Doc. 443, p. 16.) However, there are no exhibits attached to the Reply Suggestions. The exhibits attached to Defendant's Suggestions in Support are numbered and not lettered, and as noted earlier Exhibit 1 is the December 2017 Offer to pay Plaintiff $100,000 if Plaintiff will agree to a judgment in Defendant's favor. (Doc. 405-1.) None of the other exhibits to the Suggestions in Support is the document described in the Reply Suggestions. Finally, the exhibits attached to Defendant's Suggestions in Opposition to Plaintiff's Motion for Attorney Fees are lettered, but Exhibit A is not an offer. (Doc. 414-1.) The other three exhibits are the same offers that have been discussed before.

[8] Defendant relies on the Eighth Circuit's decision in *Radecki v. Amoco Oil Co.,* 858 F.2d 397 (8th Cir. 1988), to argue that the Court should apply contract principles to ascertain its true intent. *Radecki* describes how an accepted offer should be interpreted, and its holding is not so broad as to permit the Court to rewrite the explicit terms of Defendants' offers. Moreover, nothing indicates *how* the Court could rewrite these offers; it appears just as plausible to interpret them as offering exactly what they state and construing the references to Rule 68 as the inadvertent error. Finally, the Court believes it inequitable to engage in post-hoc reinterpretation of the offers, conclude that they were really Rule 68 offers, and then make Plaintiff responsible for Defendant's fees for failing to accept them.

[9] The Court's ruling makes it unnecessary to consider whether Plaintiff's recovery was more favorable than any of the offers. The Court's ruling also means that Defendant's offers have no effect in analyzing Plaintiff's request for attorney fees.

15

### D. Plaintiff's Motion for Fees and Costs

Finally, the Court addresses Plaintiff's Motion for Fees and Costs. A party who prevails on claims under § 1981 is entitled to recover "a reasonable attorney's fees as part of the costs," which can include expert fees. 42 U.S.C. § 1988(b), (c). In addition, when a statute permits attorney fees as a part of costs, the statute allows recovery of reasonable expenses of the type that attorneys ordinarily bill to clients, and not just those categories of costs that are recoverable by prevailing parties under 28 U.S.C. § 1920. *E.g., Neufeld v. Searle Laboratories,* 884 F.2d 335, 342 (8th Cir. 1989); *see also Pinkham v. Camex, Inc.,* 84 F.3d 292, 294-95 (8th Cir. 1996); *Emmenegger v. Bull Moose Tube Co.,* 33 F. Supp. 2d 1127, 1133 (E.D. Mo. 1998).

There is no serious dispute that Plaintiff was a prevailing party and is thus entitled to a fee award. With the filing of her Amended Supplemental Submission, Plaintiff has requested $1,088,002.40 in attorney fees and $52,242.38 in costs/expenses, (Doc. 442, p. 3),[10] and stresses that no reduction should be imposed based on the results of the lawsuit. Defendant argues that the fees awarded should be "drastically reduced," (Doc. 414, p. 20), and suggests that the amount awarded should be no more than 11% of the amount sought. (Doc. 414, p. 25.) As discussed below, the Court does not adopt either party's view.

### *1. Legal Framework*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). A reasonable hourly rate is one charged for similar work by attorneys in the community. *E.g., Little Rock Sch. Dist. v.*

---

[10] The Amended Supplemental Submission includes amounts attributable to briefing post-trial motions.

*Arkansas,* 674 F.3d 990, 997 (8th Cir. 2012). The Court can rely on its own experience and knowledge of prevailing market rates to determine a reasonable hourly rate. *Brewington v. Keener,* 902 F.3d 796, 805 (8th Cir. 2018). The case was filed in state court in December 2016 and removed to federal court in January 2017, so the Court can adjust for the delay in payment by applying current rates instead of historic rates. *E.g, Missouri v. Jenkins,* 491 U.S. 274, 284 (1989).

In addition, the lodestar must be adjusted based on the degree and nature of the plaintiff's success. "When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were distinct in all respects from his successful claims." *Emery v. Hunt,* 272 F.3d 1042, 1046 (8th Cir. 2001) (quotation omitted); *see also Hensley,* 461 U.S. at 434, 440. Therefore, the Court must first determine whether Plaintiff failed to prevail on claims that were unrelated to the claims she prevailed on; if she did, then the Court must determine whether Plaintiff "achieve[d] a level of success that makes the hours reasonably expended" on the entire lawsuit a "satisfactory basis" for the fee award. *Hensley,* 461 U.S. at 434; *see also Didinger v. Allsteel, Inc.,* 853 F.3d 414, 429 (8th Cir. 2017).

In determining whether the successful claims were related to unsuccessful claims, the Court should not simply count the number of successful claims and unsuccessful claims, and then rely on the resulting percentage to determine the fee award. *E.g., Phelps-Roper v. Koster,* 815 F.3d 393, 398 (8th Cir. 2016). The Court is also not required to craft a fee award that is proportional to the amount of money Plaintiff was awarded. *E.g., City of Riverside v. Rivera,* 477 U.S. 561, 574, 576 (1986). Instead, the Court must consider whether the unsuccessful claims and the successful claims involve a common core of facts or related legal theories. *E.g., Didinger,* 853 F.3d at 429; *Emery,* 272 F.3d at 1046. If the Court concludes (as it does here) that Plaintiff was unsuccessful

17

on claims involving facts different from those supporting her successful claims, the Court must reduce the award by either (1) identifying the specific hours that should be eliminated or (2) reducing the total award to account for the degree of success. *E.g., Brewington,* 902 F.3d at 805 (citing *Hensley,* 461 U.S. at 436-37); *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir. 1991). And, in considering Plaintiff's fee request, the Court must be mindful that "[a] request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437.

### 2.  Determining the Reasonable Hourly Rates

The Court begins by considering the billing rates.  The Court need not detail the rates submitted by Plaintiff because the Court concludes that they are adequately supported by the materials Plaintiff has submitted with her motion, and the rates are consistent with the Court's experience with the prevailing rates for attorneys with the experience of Plaintiff's attorneys performing this kind of legal work in this market.

Defendant argues that the rates for Dennis Egan and Martin (Marty) Meyers are too high. In their submissions, Mr. Egan and Mr. Meyers represent that their billing rate is $600/hour. Relying on an article from *Missouri Lawyer's Weekly* from August 2018, Defendant argues that Mr. Egan's rate is really $500/hour.  However, the information in the article does not come from Mr. Egan – the article explains that it calculated the rates reported in the article by gathering fee applications from the preceding twelve months; that is, the twelve months before August 2018. (Doc. 405-4, p. 4.)  Thus, the article does not purport to have calculated Mr. Egan's billing rate as of August 2018, and it based that calculation on a limited universe of information.  Accordingly, and given that Mr. Egan's billing rate by the end of the case was $600/hour, the Court elects (as permitted by *Missouri v. Jenkins,* cited above) to utilize that rate to account for the delay in payment.

### 3. Accounting for Plaintiff's Degree of Success[11]

As indicated above, the Court agrees with Defendant that Plaintiff did not succeed on claims that were unrelated to her successful claims. Plaintiff's primary success was on her 2018 retaliation claim. The factual predicate for that claim did not occur until May 2018, so obviously, no fees or expenses were incurred on that claim before May 2018. By that time, discovery on all other claims had been completed, and Defendant's Motion for Summary Judgment had been ruled. The Court has little difficulty concluding that the successful 2018 retaliation claim did not arise from a core of facts common to those giving rise to her other claims. And, most (but not all) of the work done after 2018 related to this successful claim. Discovery was reopened, but it was limited to that issue and Defendant's related (and newly-asserted) "after-acquired evidence" defense. And, while time was spent before and at trial preparing and presenting unsuccessful claims, most of the trial focused on the circumstances giving rise to the nonrenewal of Plaintiff's contract, Defendant's reasons for that decision, and Defendant's "after-acquired evidence" defense, and Plaintiff prevailed on these issues.

While Plaintiff's 2015 retaliation was asserted at the outset, the Court concludes that it does not share a common core of facts with Plaintiff's other claims, particularly the discrimination claims that the jury rejected. The facts giving rise to the 2015 retaliation claim had no connection to the facts that gave rise to Plaintiff's claim that she was denied a promotion to weekend anchor in 2013 or a promotion to investigative reporter in 2015. That said, the Court cannot conclude that

---

[11] Defendant presents several arguments addressing discrete time entries that the Court will not address separately. In some instances, Defendant has not provided legal support and the Court disagrees with the argument (*e.g.,* that fees cannot be awarded for work performed by attorneys who did not enter their appearance in the case; fees cannot be awarded for accompanying Plaintiff to the interview conducted by Ann Molloy). In other instances, the Court elects to exercise its discretion to account for the issue by adjusting the percentage of the lodestar awarded instead of parsing individual time entries. Finally, some of Defendant's arguments (for instance, its contention that the Court should tally the successful claims and the unsuccessful claims and award the corresponding percentage of fees) are legally incorrect for reasons previously stated.

none of the work done before May 2018 is compensable. Plaintiff prevailed on the 2015 retaliation claim, and some of the other work performed was necessary to provide the context for both of Plaintiff's successful retaliation claims.

Based on the Court's familiarity with the course of litigation and the trial in this case, and after reviewing the materials submitted by the parties, the Court concludes that Plaintiff should recover 75% of the fees incurred after May 1, 2018, and 25% of the fees incurred before that date. The Court's calculations indicate that $839,317.90 in fees were incurred after May 1, 2018, and $248,684.50 were incurred before that date. Accordingly, the Court awards Plaintiff attorney fees in the amount of $691,659.55.[12]

### III. CONCLUSION

For the reasons stated above, Defendant's Motion for Attorney's Fees and Costs is **DENIED**. Plaintiff's motion for equitable relief, fees and costs is **GRANTED IN PART** as follows:

1. Plaintiff is awarded an additional $110,000, representing front pay in lieu of reinstatement.
2. Defendant is **ORDERED** to include a copy of the completed Verdict Forms C and D in Plaintiff's employment file.
3. Plaintiff is awarded attorney's fees in the amount of $691,659.56 and costs and expenses in the amount of $31,047.70.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: June 26, 2019         UNITED STATES DISTRICT COURT

---

[12] The Court applies a similar analysis to Plaintiff's request for $52,242.38 for costs and expenses, (Doc. 399-3, pp. 25-27; Doc. 441-2), except the Court treats all expenses associated with Monica Biernat's depositions as incurred prior to May 2018, to reflect the limited admissibility of her expert opinions. This results in reimbursement of $31,047.70 in costs/expenses.